# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1122 | **DATE** | 6/11/2001 |
| **CASE TITLE** | Builders Association vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 7/23/01 at 9:30 a.m. Memorandum opinion was issued to counsel during status hearing.. Enter Memorandum Opinion.

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 1 2 2001 | 177 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | 6/11/2001 date mailed notice | |
| tw | courtroom deputy's initials | 01 JUN 11 PM 3:33 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BUILDERS ASSOCIATION OF<br>GREATER CHICAGO<br>Plaintiff, | )<br>)<br>)<br>) | **DOCKETED**<br>JUN 1 2 2001 |
| v. | ) | Case No. 96 C 1122 |
| CITY OF CHICAGO<br>Defendant. | )<br>)<br>)<br>)<br>)<br>) | Judge James B. Moran<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION

Geraldine Soat Brown, United States Magistrate Judge

This matter has been referred to this Court by the District Judge for discovery supervision and ruling on certain objections and motions to quash or to enforce certain subpoenas. [Dkt #135.] As described below, because many of the objections and motions raised common issues relating to the scope of discovery, it was decided that the Court would entertain argument on issues relating to the scope of discovery first, and deal subsequently with individual objections by the recipients of the subpoenas. For the following reasons, the Court rules, and defers ruling, as to certain issues relating to the scope of discovery, as follows.

## PROCEDURAL BACKGROUND

In 1996, plaintiff Builders Association of Greater Chicago ("BAGC"), an association of general contractors and subcontractors, filed this lawsuit challenging the constitutionality of the City of Chicago's Minority-owned and Women-owned Business Enterprise Procurement Ordinance and

1

177

the Program promulgated pursuant to that Ordinance ("M/WBE Program" or "Ordinance"). The Ordinance requires that each contract let by the City of Chicago ("City") with a value in excess of $10,000 include a commitment that the contractor will set aside minimum percentages of subcontract work (*i.e.*, a percentage of the dollar amounts paid to subcontractors for the work) for qualified M/WBEs. The mandatory minimums are 25% for minority-owned and 5% for women-owned businesses. The Ordinance also sets aside certain projects exclusively for M/WBEs. Contractors can seek a waiver of the set-aside requirements for good faith non-compliance, though the Ordinance narrowly limits the circumstances under which a waiver may be granted. The set-aside program, codified at Chapter 26 of the Municipal Code of Chicago (the "Municipal Code"), was adopted originally in 1984 and amended in 1990 by Chapters 2-92-420 through 2-92-580 of the Municipal Code. (Amended Complaint, ¶¶ 1, 5, 18, 28-31 [Dkt #27].)

Contemporaneously with its filing of this lawsuit against the City, the BAGC also filed a parallel challenge to the constitutionality of construction contract set-aside requirements established by the County of Cook, the Illinois county in which the City is located. *Builders Ass'n of Greater Chicago v. County of Cook*, 96 C 1121, N.D. Ill. (The present action is referred herein as "*BAGC v. City*" while the BAGC's lawsuit challenging the County's ordinance is referred to herein as "*BAGC v. County*.")

*BAGC v. County*

After denying cross-motions for summary judgment and hearing a three-week bench trial, Judge John F. Grady entered judgment on November 2, 2000 in favor of the plaintiff in *BAGC v. County*, finding that Cook County's ordinance violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Builders Ass'n of Greater Chicago v.*

2

*County of Cook*, 123 F.Supp. 2d 1087 (N.D. Ill. 2000). Judge Grady held that Cook County had failed to introduce persuasive evidence of a "compelling interest" in its MBE set-aside or an "important governmental interest" in its WBE set-aside, or that the County ordinance's set-aside quotas of 30 per cent and ten per cent respectively for minority-owned and women-owned subcontractors were "narrowly tailored" to redress the degree of discrimination that actually existed against M/WBEs in Cook County. *Id.* at 1116. The County and certain intervenors appealed from Judge Grady's judgment to the Court of Appeals for the Seventh Circuit. (Appeals No. 00-4161 and 00-4175, consolidated.) The Court of Appeals heard oral argument on May 10, 2001.

History of discovery in this case.

Although much of the history of discovery in this lawsuit occurred before the referral to this Court, that history is discussed in the briefs submitted by the City and the BAGC. According to those briefs, after the filing of the lawsuit, the City initially sent out ten subpoenas to members of the BAGC, and there followed a period in which information to be used in both *BAGC v. County* and the present action was sought to be obtained by survey. (Def. City of Chicago's Resp. to Third Party Mot. to Quash at 2-5; BAGC's Reply Brief Regarding the City's Subpoenas at 3-5.) The City contends that the information obtained from the BAGC's members in response to the survey was "largely incomplete, meaningless, non-responsive and mathematically inconsistent." (Def. City of Chicago's Resp. to Third Party Mot. to Quash at 4.) The BAGC counters that any insufficiencies in the survey response are the result of flaws in the defendants' design of the survey and the fact that the BAGC's members do not and are not required to maintain business records that would provide information such as the survey sought to obtain. According to the City, there were unsuccessful settlement negotiations, and a tacit agreement to allow *BAGC v. County* to proceed to judgment first

3

before attempting to resolve discovery or otherwise prosecute *BAGC v. City*. (Def. City of Chicago's Resp. to Third Party Mot. to Quash at 5.) In September, 2000, the City states, the BAGC "invited the City to conduct discovery directly [with the BAGC members]." (*Id.* at 7.)

The survey results were converted into interrogatory answers in *BAGC v. County*, and were used as part of the basis of the County expert's opinion at trial. 123 F.Supp. 2d at 1095. The BAGC's expert testimony criticized the County expert's conclusions as based on "sparse statistical data." *Id.* at 1109. Judge Grady concluded that the County had not proven that general construction contractors in the six-county area have engaged in a pattern of refusing to hire or consider hiring M/WBE subcontractors because of race, gender or ethnicity. *Id.* at 1116.

The docket record for *BAGC v. County* reflects that the trial in that case, including the BAGC's expert testimony critical of the County's proof, took place in July 2000. Judge Grady's opinion was issued November 2, 2000. In late October and early November, 2000, the City in the present lawsuit served subpoenas with virtually identical Riders requesting 49 categories of documents to: (a) all of the contractors and subcontractors who had been members of the BAGC when the case was filed in 1996 ; (b) all of the contractor and subcontractor members of the Illinois Road Builders Association; (c) all of the contractor and subcontractor members of the Underground Contractors Association ; and (d) all of the contractor and subcontractor members of the Electrical Contractors Association. (Def. City of Chicago's Resp. to Third Party Mot. to Quash at 8-9.) In all, the City has sent out at least 500 subpoenas, and has expressed a need to issue more. (Tr. of April 30, 2001 at 34.)

4

The objections and motions regarding the City's subpoenas.

Dozens of objections and motions to quash were filed by various recipients of the subpoenas, including individual contractors and trade associations like the Electrical Contractors Association. (The entities that filed motions to quash or objections are collectively referred to herein as the "Movants and Objectors.") The City also moved to compel responses to the subpoenas. [Dkt #119.] After discovery supervision was referred to this Court, the City and the BAGC, at the Court's request and with input from the various Movants and Objectors, assembled a status report identifying the various motions and objections that had been filed, and reporting on the status of the objections. (Joint Status Report for Magistrate Judge Geraldine Soat Brown [Dkt #150].)[1] The status report reflects that 44 entities expressed objections or moved to quash. Some, like the Electrical Contractors Association, expressed objections on its own behalf and on behalf of its members. The report also reflected that some of the objections have been resolved between the City and the particular Movant or Objector.

In addition to particular objections relating to particular subpoena recipients, there are certain overriding issues regarding the proper scope of discovery in this case. It was decided that those issues would be addressed first, and that particular objections would be reserved for later individualized treatment. Argument on the overriding issues was held on April 30, 2001 and, again at the Court's request, the BAGC prepared and served, in advance, a List of Issues to be Heard at Oral Argument [Dkt #157], so that Movants and Objectors could decide whether they wanted to have their counsel appear and argue, or whether they would rely on the BAGC's counsel's argument.

---

[1] The Court appreciates the professionalism and cooperation of all counsel in preparing that status report, which is a very useful assembly of information.

5

## THE ISSUE OF "POST-ENACTMENT" EVIDENCE AND
## THE APPROPRIATE SCOPE OF THE CITY'S SUBPOENAS.

The central, overriding dispute relates to what evidence the City can use to prove its *prima facie* case in support of the Ordinance and, correspondingly, what discovery the City can undertake to assemble that evidence. This dispute over admissibility–and hence discoverability–of evidence arises because of the nature of the BAGC's challenge to the Ordinance. Judge Grady's phrasing of the issue in *BAGC v. County* applies to this case as well:

> Normally, of course, the plaintiff in a lawsuit has the burden of proof. But the plaintiff in this case is challenging the constitutionality of a county ordinance which the County has the burden of justifying with "a strong basis in the evidence." *Croson*, [*City of Richmond v. J.A. Croson Co.*] 488 U.S. 469 at 500, 510, 109 S.Ct. 706. The Seventh Circuit has explained the respective burdens of the parties in a case where a plaintiff is challenging a governmental action that is subject to this heightened scrutiny:
>
>> Once the governmental entity has shown acceptable proof of a compelling interest in remedying past discrimination and illustrated that its plan is narrowly tailored to achieve this goal, the party challenging the affirmative action plan bears the ultimate burden of proving that the plan is unconstitutional.
>
> *Majeske v. City of Chicago*, 218 F.3d 816, 820 (7th Cir.2000) (citations omitted). We understand this to mean that once the governmental entity has made a *prima facie* showing of the necessary interest, the plaintiff has the burden of overcoming the *prima facie* case by the greater weight of the evidence.

123 F.Supp. 2d at 1094. A critical part of the dispute is whether the "acceptable proof" is limited to what information the City Council actually had before it when it adopted the Ordinance or whether the "acceptable proof" can consist of, or at least include, evidence the City can *now* assemble concerning discrimination in the construction industry at the time that it enacted the M/WBE Ordinance.[2] This latter evidence is included in the phrase "post-enactment evidence,"

---

[2] The City takes the position that it may subpoena information dating back to 1978, five years before the enactment of the W/MBE Ordinance. (Def. City of Chicago's Resp. to Third Party

although what is actually being referred to is evidence of *pre-enactment* conditions, *assembled* post-enactment. The City further argues that because the BAGC also challenges the continuing administration and enforcement of the Ordinance into the present day, the City must also demonstrate that minority and women contractors suffer continuing discrimination. (Def. City of Chicago's Resp. to Third Party Mot. to Quash at 17.) Thus, the City also seeks "post-enactment evidence" in the sense of evidence about conditions after the enactment of the Ordinance. (*Id.*) In addition, assuming, *arguendo*, that some post-enactment evidence is admitted, there are issues about what post-enactment evidence might be relevant. For example, the BAGC argues that union activities and employment discrimination claims against the individual contractors are not admissible and therefore should not be discoverable.

The issue of the admissibility of post-enactment evidence has confronted courts around the country as they hear challenges to set-aside programs like the Ordinance. *See West Tennessee Chapter of Associated Builders and Contractors, Inc. v. City of Memphis*, 138 F.Supp. 2d 1015, 2000 WL 33270372 (W.D.Tenn. 2000) (collecting cases, concluding that there are substantial grounds for difference of opinion, and certifying the issue for interlocutory appeal to the Sixth Circuit).

In *BAGC v. County*, the County admitted that it had no evidence of discrimination that had occurred prior to the enactment of the County's Ordinance. 123 F.Supp. 2d at 1093. Although Judge Grady stated that he had "some doubt about the matter," in the absence of Seventh Circuit precedent and in view of decisions in several circuits holding that post-enactment evidence could be sufficient to support a race-based or gender-based preference, he denied the BAGC's motion for

Mot. to Quash at 3, n. 3.)

summary judgment. He allowed the County to attempt to make the necessary showing with post-enactment evidence. 123 F.Supp. 2d at 1094. As noted above, the County was unable to do so.

The County and the BAGC have raised and briefed the issue of admissibility of post-enactment evidence to the Seventh Circuit in the appeal of *BAGC v. County*. (BAGC Resp. Brief at 37-40; County Reply Brief at 8-9.) As discussed above, that appeal was argued on May 10, 2001. Because Judge Grady's decision resulted in an injunction against the enforcement of the Ordinance, it is reasonable to expect that the Seventh Circuit will be issuing an opinion imminently. The question before this Court is whether this Court should pronounce a decision on such a critical issue or wait for the Seventh Circuit's soon-expected opinion, which may determine the post-enactment evidence issue, or at least provide guidance. The answer to that question is apparent.

For that reason, the Court defers decision on the issue of the appropriate scope of the City's subpoenas until an opinion is issued by the Seventh Circuit in *BAGC v. County*. However, there are a number of issues that can be decided at this time.

## IS THE BAGC COLLATERALLY ESTOPPED FROM OBJECTING TO THE ADMISSION OF POST-ENACTMENT EVIDENCE?

The City contends that the BAGC is precluded under the principle of collateral estoppel from re-litigating the issue of whether post-enactment evidence is admissible (and therefore, by inference, presumably discoverable). (Def.'s Suppl. Br. in Opp'n to Mot. to Quash at 2 [Dkt #156].) The City also asserts (an argument discussed in the following section) that the non-party Movants and Objectors have no standing to object to the subpoenas on relevancy grounds. (*Id.* at 2, n.2.) Therefore, the City argues, the issue is concluded as to whether post-enactment evidence is discoverable.

A party is precluded from relitigating an issue where: 1) the issue sought to be precluded is

8

the same as that involved in the prior action; 2) the issue actually was litigated; 3) the determination of the issue was essential to the final judgment in the prior case; 4) the party against whom estoppel is invoked was represented in the prior action. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). The Seventh Circuit also looks to the *Restatement of Judgments* concerning collateral estoppel requirements. *Chicago Truck Drivers, Helpers and Warehouse Union v. Century Motor Freight*, 125 F.3d 526, 531 (1997). The *Restatement (Second) of Judgments* §27 states the general rule for issue preclusion:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Applying the factors set forth in *Adair*, *supra*, to *BAGC v. County* and *BAGC v. City*, this Court concludes that the BAGC is not collaterally estopped from challenging whether post-enactment evidence is admissible.

The basis for the City's collateral estoppel argument is its assertion that Judge Grady's ruling in *BAGC v. County* constitutes a holding by the Northern District of Illinois that post-enactment evidence is admissible. (Def.'s Suppl. Br. in Opp'n to Mot. to Quash at 3.) As a preliminary matter, it is important to consider the context in which Judge Grady made the decision to admit post-enactment evidence. As noted above, the issue arose when the BAGC moved for summary judgment after the County admitted that it had no specific evidence of pre-enactment discrimination to support the Ordinance. 123 F. Supp.2d at 1093. Judge Grady's discussion of his decision to deny summary judgment, quoted *supra*, is hardly a "holding" that any and all post-enactment is admissible. Rather, his conclusion was that established precedent was not clear enough to give summary judgment for the BAGC based on a lack of pre-enactment evidence, where the County argued that it would present

9

(post-enactment) evidence demonstrating that "in the absence of the ordinance, there would be race and gender discrimination by prime contractors in their selection of subcontractors for work on county projects." *Id.* Judge Grady also noted that, in rejecting the plaintiff's pretrial argument against the County's evidence, he "resolve[d] doubts in favor of the defendants and proceeded to trial." *Id.* at 1112. In evaluating the evidence, he "put[ ] aside plaintiff's argument that it is not good enough," and considered what evidence there was to support the Ordinance. *Id.* at 1113. The conclusion, judgment in favor of the BAGC, cannot constitute a precedent that, as a matter of law, post-enactment evidence is admissible.

Viewing Judge Grady's ruling in context, the third requirement for issue preclusion, that the determination is essential to the judgment, is not satisfied. The judgment–in favor of the BAGC– would have been the same even if Judge Grady had excluded all post-enactment evidence.[3]

As to the first *Adair* requirement, whether *BAGC v. County* and *BAGC v. City* concern identical issues, this is a question of law. *Adair*, 230 F.3d at 893. The court must consider four factors in making this determination: 1) whether there is substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first; 2) whether the new evidence or argument involves application of the same rule of law as that involved in the prior proceeding; 3) whether pretrial preparation and discovery related to the matter presented in the first

---

[3] Illustration 14 to the *Restatement (Second) of Judgments* §27 illustrates this situation:

> A, as owner of a trademark, brings an action against B for infringement. B denies the validity of the trademark and denies infringement. The court finds that the trademark is valid, but that B had not infringed it, and gives judgment for B. Thereafter A brings an action against B alleging that since the rendition of the judgment B infringed the trademark. B is not precluded from defending this action on the ground that the trademark is invalid.

10

action reasonably can be expected to embrace the matter sought to be presented in the second action; 4) whether and to what extent the claims involved in the two proceedings are closely related. *Restatement (Second) of Judgments* §27, cmt. c.; *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).

Applying the *Restatement* analysis, the Court finds the issue in the present case is not *identical* to that considered by Judge Grady in *BAGC v. County* so as to preclude any argument by the BAGC that evidence of the scope that the City seeks here is inadmissible. First, the post-enactment evidence the City would present in the present case could, in theory, be substantially different from the evidence submitted in *BAGC v. County* to support the County ordinance. The two entities have geographically different territories, and are concerned with different public construction projects, and thus, the contracts may attract potentially different general contractors and subcontractors. *See Resolution Trust Corp v. Keating,* 186 F.3d at 1117-18 (no collateral estoppel where the defendant was charged identically with fraud as to various savings and loan institutions, but the evidence relating to each institution was unique to that savings and loan.) Secondly, in *BAGC v. County*, the County introduced anecdotal testimony from fourteen M/WBE owners concerning their claimed experiences of discrimination, testimony from two county officials, adverse testimony from two general contractors and expert testimony including the previously-discussed survey. By contrast in the present case, the City seeks documentary evidence from 500 building contractors concerning essentially every project those contractors have worked on in the period from 1978 to the present, including all documents having to do with inviting subcontractor bids, evaluating and selecting subcontractors, researching qualifications of claimed M/WBEs, and identifying the ultimate receiver of payments to purported M/WBE subcontractors. (Def.'s Resp. to Third Party Mot. to Quash Ex. H, J, L, N [Dkt #119].) The City has announced its intention to

11

analyze this data in a statistical evaluation of M/WBE utilization both before and after enactment of the Ordinance. (*Id.* at 2, 4, 7-8, 17, 25, 33; Def.'s Opp'n to Mot. of Electrical Contractors Ass'n at 5; Tr. of April 30, 2001 at 35-36, 38-40, 42, 45, 50.)

It was only in the aftermath of the insufficient evidence in *BAGC v. County* that the City subpoenaed the documents it now seeks for its comprehensive database and statistical analysis. The reactionary aspect of City's discovery attempt demonstrates the subtle but significant difference in deciding the issue of post-enactment evidence in *BAGC v. County* and what is being sought here. There is nothing in *BAGC v. County* to suggest that Judge Grady determined that the defendant could enforce hundreds of subpoenas requiring non-parties to produce their files for the past 22 years to enable defendant's experts to construct complex statistical analyses from a potential mountain of pre- and post-enactment data.

Interestingly, the City responded to the suggestion that collateral estoppel might preclude *it* from relitigating issues determined in *BAGC v. County* by stating, "[I]t would be absurd to believe that there is complete identity between the issues in the County litigation and the current litigation, where the City's Ordinance and the foundation therefore are vastly different than the County's program." (Def. City of Chicago's Resp. to Third Party Mot. to Quash at 36.)

Accordingly, the second factor requiring an *identity* of the issues in the two cases, is not present.

As to the fourth requirement, that the parties to be estopped all were represented in the prior litigation, clearly this cannot apply to the non-party Movants and Objectors. Many of the 500 business entities subpoenaed by the City were not parties in *BAGC v. County*. Hence these parties cannot be estopped from challenging the City's attempt to conduct discovery of post-enactment evidence in the present case.

This is not to say that Judge Grady's decision to admit post-enactment evidence should be disregarded. The Court only concludes that collateral estoppel does not preclude the BAGC or the Movants and Objectors from litigating the issue of whether post-enactment evidence is admissible and therefore discoverable.

## DO THE MOVANTS AND OBJECTORS WHO ARE NOT PARTIES HAVE STANDING TO OBJECT TO THE SUBPOENAS ON THE GROUNDS OF RELEVANCE?

The City argues that the non-party Movants and Objectors have no standing to challenge the relevance of documents sought in the subpoenas, and that such a challenge can be brought only on their behalf by a party. The City cites *Thomas v. City of Durham*, 1999 WL 203453, *1, n.1 (M.D.N.C.), and *Shore Acres Nursing Home, Inc. v. Continental Medical Systems, Inc.*, 1991 WL 53664, *3 (E.D.Pa.), to support this contention. (Def. City of Chicago's Reply in Support of its Supp. Br. Regarding Collateral Estoppel at 2-3.) However, neither of those cases directly so holds.[4]

---

[4] *Thomas* was an employment discrimination action in which the plaintiff sought personnel files of a number of non-party employees of the defendant. The City objected to production. The passage quoted by the City is part of a footnote in which the court discussed the effort by one of the defendant's employees to maintain the confidentiality of his own personnel file. Significantly, the employee was not the recipient of the subpoena, and although the documents related to his employment, the records were the defendant's.

In *Shore Acres*, the recipients of the subpoenas were attorneys who asserted protection on privilege grounds, not relevance. The City's brief cites another decision from the Eastern District of Pennsylvania, *Tetratec Corp. v. E.I.Dupont De Nemours & Co., Inc.*, 1992 WL 202169 (E.D. Pa. 1992) as "reaching the opposite conclusion without overruling *Shore Acres*." (Def. City of Chicago's Reply in Support of its Supp. Br. Regarding Collateral Estoppel at 3.) In fact, the court in *Tetratec* never discussed *Shore Acres*, probably because *Shore Acres* does not actually hold that non-party witnesses do not have standing to raise relevancy issues. The comments of the court in *Shore Acres* are, at most, *dicta*.

*Tetratec*, on the other hand, involved a non-party recipient of a subpoena who raised an objection based on relevance. The court held that such an objection may be made, noting, "When ruling on discovery motions, courts have held that non-parties are entitled to greater protection than parties." 1992 WL 202169, *1. *See also Hunter v. Heffernan*, No. Civ.A .94-5340, 1996 WL

13

On the contrary, courts have held that non-parties may raise relevancy objections to subpoenas. *See American Electrical Power Co., Inc. v. U.S.*, 191 F.R.D.132, 136 (S.D.Ohio 1999) (collecting cases).

Judge James Moran, the District Judge presiding in this case, has permitted a non-party witness to assert relevancy objections to a subpoena. In *Shields Enterprises, Inc. v. First Chicago Corp.*, 1988 WL 142200, Judge Moran overruled a magistrate judge's decision that a non-party did not have standing to object to the relevance of materials sought in a subpoena where both the plaintiff and the defendant agreed the discovery directed to the non-party was relevant. Judge Moran found persuasive the reasoning of the court in *Fein v. Numex Corp*, 92 F.R.D. 94, 96 (S.D.N.Y. 1981): "[I]t is difficult to imagine a considered evaluation of burdensomeness in the abstract, without balancing the degree of burdensomeness against the extent to which the discovery sought is relevant to the issues in the litigation." 1988 WL 142200, *3.

In the present case, the BAGC does challenge the relevance of the City's discovery requests, and the City argues that the non-parties' interests already are represented by a party. (Def. City of Chicago's Reply in Support of its Supp. Br. Regarding Collateral Estoppel at 3.) However, the extremely broad scope of the City's Rider to its subpoenas suggests that the Movants and Objectors who wish to argue the relevancy issues should be permitted to do so and not be required to rely on any party to adequately represent them. As indicated above, the City seeks discovery of information covering the period from 1978 to the present. The information it seeks would require contractors to turn over substantially all documents related to every project in that 23-year period, and to furnish additional information on a range of detailed issues relating to subcontractor selection, subcontractor qualifications for the designation of M/WBE, skill and experience evaluations of M/WBE

---

363842, *1, n.1 (E.D. Pa. 1996): "A non-party resisting a subpoena ducas tecum may challenge the relevance of material sought to the underlying action."

subcontractors compared with non-M/WBE subcontractors, and the responding entity's experience with discrimination claims. A number of subpoenaed contractors in this case have indicated that the legal fees and other costs entailed in responding to the City's discovery requests would impose a significant economic burden.

Subpoenaed non-parties have the right to challenge the burdensomeness and expense of responding to the subpoena, pursuant to Fed. R.Civ. P. 45(c). The 1991 amendments to Rule 45, which added Subsection (c)(3)(A)(iv), require the court to protect non-parties from "undue burden." The court in *American Power* stated:

> Whether a subpoena imposes an "undue burden" upon a witness is a case specific inquiry that turns on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."

191 F.R.D. at 136, citations omitted. Here, before the Court considers the particular objections to the subpoenas, as a threshold matter the Court must decide whether the City is entitled to conduct *any* discovery of parties or non-parties for the purpose of obtaining post-enactment evidence to support the constitutionality of the Ordinance, and if so, the extent of that discovery.

> Obviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon Acer [the subpoenaed entity] would be by definition "undue."

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995), emphasis in original.

With so much at stake, the non-parties should be given the opportunity to speak for themselves on this matter. This Court concludes the non-party movants and objectors have standing on their own behalf to challenge the relevance of the materials sought in the subpoenas and are not limited to arguing to the burdensomeness of responding to the subpoena in their particular situations.

## CONCLUSION

For the foregoing reasons, this Court hereby rules:

1. The Court will defer ruling on the issues of the relevance and proper scope of the City's subpoenas until the Court of Appeals for the Seventh Circuit issues its opinion in *Builders Ass'n of Greater Chicago v. County of Cook;*

2. Plaintiff Builders Association of Greater Chicago and the non-party Movants and Objectors are not estopped from objecting to the admissibility or discovery of so-called "post-enactment" evidence; and

3. The non-party recipients of subpoenas issued by the City in this case have standing to object to the subpoenas on the ground of relevance.

ENTER:

*Geraldine Soat Brown*
Geraldine Soat Brown
United States Magistrate Judge

Dated: June 11, 2001