# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1122 | **DATE** | 5/13/2002 |
| **CASE TITLE** | BAGC vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set out in the Memorandum Opinion and Order, the Electrical Contractors Association's Petition for an Award of Attorneys' Fees and Costs [Dkt # 239] is GRANTED in the amount of $157,277.75; the Fee Petition of the Underground Movants [Dkt # 240] is GRANTED in the amount of $47,826.48; and Kiferbaum Construction Corp.'s Request for Attorneys' Fees [Dkt # 237] is GRANTED in the amount of $6,745.00. This obligation is imposed jointly and severally upon the City and its counsel of record, and shall be paid within 21 days of this order. _Geraldine Soat Brown_

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 1 3 2002 | | | |
| | Notified counsel by telephone. | | date docketed | | | 317 |
| | Docketing to mail notices. | | | ls | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| ✓ | Copy to judge/magistrate judge. | | | 5/13/2002 | | |
| | | | | date mailed notice | | |
| | tw | courtroom deputy's initials | | | | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAY 1 3 2002

BUILDERS ASSOCIATION OF )    Cause No. 96 C 1122
GREATER CHICAGO, )
     Plaintiff, )
 )
    v. )    Judge James B. Moran
 )    Magistrate Judge Geraldine Soat Brown
CITY OF CHICAGO, )
     Defendant. )
 )

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

In his decision overruling objections filed by the City of Chicago (the "City") to this Court's

Memorandum Opinion and Order (the "Order") quashing approximately 500 subpoenas served by

the City of Chicago on various contractors and subcontractors [Dkt ## 203, 225], the District Judge

also overruled as premature the objection filed by the Electrical Contractors Association ("ECA")

to the fact that this Court had not granted the ECA's request for fees and costs under Fed. R. Civ.P.

45(c)(1). The District Judge's order referred the issue of fees and costs back to this Court.

Subsequently, this Court set a deadline for filing any petitions for fees. [Dkt # 233.] Fee petitions

were filed by the Underground Contractors Association (the "UCA") (on behalf of itself and its

members) and Kiferbaum Construction Corp. ("Kiferbaum"), as well as by the ECA (on behalf of

itself and its members). The City filed an Opposition to the petitions. [Dkt # 246.] For the reasons

set out below, the ECA's Petition for an Award of Attorneys' Fees and Costs [Dkt # 239] is

GRANTED in the amount of $157,277.75; the Fee Petition of the Underground Movants [Dkt # 240]

1

is GRANTED in the amount of $47,826.48; and Kiferbaum Construction Corp.'s Request for Attorneys' Fees [Dkt # 237] is GRANTED in the amount of $6,745.00.

## FACTUAL BACKGROUND

The facts relating to the subpoenas and the motions to quash were set out in the Order, and will not be repeated.

In support of its petition seeking $161,705 in attorneys' fees and $174.00 in costs, the ECA states that it was originally served with a subpoena by the City in this matter in June 1998 and responded to that subpoena in July 1998. (ECA Pet. ¶¶ 2-3.) More than two years later, the City served the ECA and 58 of the ECA's contractor members with the subpoenas that were discussed in the Order. (ECA Reply Mem. at 2.) [Dkt # 137.] The ECA states that four attorneys and a paralegal spent a total of 623 hours in various activities relating to the subpoenas that were ultimately quashed. (ECA's Pet. ¶ 13 and Schedule A: Itemization of Attorneys' Fees.) The ECA states that all of the fees and costs sought have been billed to the ECA (or will be in the ordinary course). (*Id.* ¶ 13.)

The UCA seeks $48,303.48 in fees and costs for representing itself and its members in activities relating to subpoenas. (Fee Pet. Underground Movants ¶ 6). Those activities included coordinating and communicating with the many represented clients, attending meetings with and communicating with the City's counsel in an effort to narrow the scope of the subpoenas, moving to quash the subpoenas and filing the associated papers with the court, and attending various court hearings relating to the subpoenas. (*Id.* ¶ 5 and Ex. A.)

Kiferbaum seeks $6,745 in attorneys' fees for time spent by corporate counsel and retained

counsel. (Kiferbaum Request at 2.) Review of the record suggests that the substantially lower amount sought reflects in part the fact that Kiferbaum's counsel spent less time researching and preparing briefs, instead relying and adopting arguments set forth in the ECA's filings.

The City argues that the petitions should be denied entirely for four reasons: 1) The legal standard is whether the City violated Rule 11 standards, which the City says it did not; 2) The subpoenas were not frivolous and did not cause undue burden; 3) The City acted in good faith; and 4) The petitions are unreasonable. (City's Opp'n at 1-2, 6, 8.) These arguments are discussed below.

## LEGAL STANDARD

The ECA, the UCA and Kiferbaum (collectively the "Petitioners") bring their petitions for fees pursuant to Fed. R. Civ. P. 45(c)(1), which provides:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Subdivision c(1) was added to Rule 45 in 1991. The Advisory Committee Notes to the 1991 amendment state that one of the proposes of revising Rule 45 was "to clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence." The Advisory Committee Notes to subdivision (c) state:

> This provision is new and states the rights of witnesses. It is not intended to diminish rights conferred by Rules 26-37 or any other authority.
>      Paragraph (c)(1) gives specific application to the principle stated in Rule 26(g) and specifies liability for earnings lost by a non-party witness as a result of a misuse of the subpoena. No change in existing law is thereby effected. Abuse of a subpoena is an actionable tort [citation omitted], and the duty of the attorney to the non-party is also embodied in Model Rule of Professional Conduct 4.4. The liability

of the attorney is correlative to the expanded power of the attorney to issue subpoenas. The liability may include the cost of fees to collect attorneys' fees owed as a result of a breach of this duty.

*Id.*

The City and the ECA disagree about the standard that is to govern the court's decision whether to award attorney's fees. Citing *Butta-Brinkman v. Financial Collection Agencies (1990), Inc.,* No. 95 C 3632, 1996 WL 535312, (N.D. Ill. Sept. 18, 1996)(Guzman, M.J.), and *Dravo Corp. v. Liberty Mutual Ins. Co.,* 160 F.R.D. 123 (D. Neb. 1995), the City argues that the standards applicable to Rule 11 govern the awarding of fees under Rule 45(c)(1). (City's Opp'n at 1.) However, as the ECA points out, *Butta-Brinkman* is not a holding that Rule 11 standards apply to the decision to award fees under Rule 45(c)(1) when, as here, the subpoena has been quashed because it imposed an undue burden on a non-party. (ECA's Mem. of Law at 5, n.1.) In that case then-Magistrate Judge Guzman quashed the subpoena for lack of service; the subpoenaed person had not even argued that it was unduly burdensome. *Butta-Brinkman,* 1996 WL 535312, *1. Judge Guzman expressed doubt as to whether Rule 45(c)(1) even applies in that situation. *Id.* The *Dravo* case is also materially different from the present situation. Although the subpoenas in that case were quashed, the objections related to the potential use of the documents rather than the scope of what was requested. 160 F.R.D. at 127. Those problems, the court stated, might be obviated by a protective order if the parties would agree to cooperate in drafting and applying one. *Id.* The court refused to award fees because it found that Dravo's discovery efforts were objectively reasonable under Rule 11(b). *Id.* at 129.[1] The court cited *Mann v. University of Cincinnati,* 152 F.R.D. 119,

---

[1] The issue of any difference in standards between Rule 11, Rule 26 and Rule 45 may not have been briefed and argued because the movants in *Dravo* did not cite Rule 45(c)(1) as the basis for their request for fees. 160 F.R.D. at 128.

126, n.2 (S.D. Ohio 1993), as support for applying Rule 11 standards. *Dravo*, 160 F.R.D. at 128.

The *Mann* case does not actually discuss the issue of whether a Rule 45(c)(1) award is governed by

Rule 11 standards. In the footnote cited by the court in *Dravo*, the court in *Mann* quoted the Seventh

Circuit's decision in *Insurance Benefit Administrators, Inc. v. Martin*, 871 F.2d 1354, 1360 (7th Cir.

1989), that Rule 26 sanctions are to be analyzed like those imposed under Rule 11. The *Martin*

decision, of course, pre-dates the adoption of Rule 45(c)(1), and relates to Rule 26 (discussed *below*).

In any event, counsel's behavior in the *Mann* case was so abusive that it violated not only Rule 45

but also "unquestionably offend[ed]" the plaintiff's "basic and fundamental rights" to privacy. 152

F.R.D. at 126 (citing prior authority). The court in *Mann* invoked not only Rule 45, but also Rule

37 and the court's inherent authority to impose sanctions. *Id.* at 126-27.

None of those cases requires the position that the City advocates: that a court may not award

fees under Rule 45(c)(1) unless a party's conduct was such that sanctions under Rule 11 would also

be justified. Furthermore, applying Rule 11 standards appears to be inconsistent with the intention

of the drafters in revising Rule 45. In 1991 when subdivision (c)(1) was added to Rule 45, Rule

26(g) provided protection from discovery abuses in language parallel to Rule 11 in its pre-1993

amendment form.[2] Although Rule 26 was amended in 1993 to add subdivision (g)(1), the language

---

[2] Prior to the 1993 amendments, Rule 11 provided, in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. . . . The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading,

of Rule 26(g)(2) remains substantially the same as the prior Rule 26(g).

Rule 26(g) had been used to provide relief for non-parties subjected to improper subpoenas. *See, e.g., In re Byrd, Inc.* 927 F.2d 1135 (10th Cir. 1991). In *Byrd*, the Tenth Circuit affirmed applying Rule 11 standards to the decision to award sanctions for misuse of a subpoena, noting, as the Seventh Circuit had in the *Insurance Benefit* case, the parallel language of Rule 26(g) and Rule 11. *Id.* at 1137. In order to fit into that framework, the court identified the sanctioned party's motion for an order to enforce the subpoena as the "pleading at issue." *Id.*

In light of this history, the addition of Rule 45(c)(1) should be interpreted, as the Advisory Committee Notes state, "to clarify and enlarge the protections afforded" non-parties, and to "give specific application to Rule 26(g)." Rules 26(g)(2) and 11 have a different focus from Rule 45. While Rules 11 and 26(g)(2) focus on the actions and motives of the issuing party, Rule 45(c) focuses on the burden imposed on the subpoena recipient. Rule 45(c)(3) requires the court to modify or quash a subpoena that imposes an undue burden on the recipient. Rule 45(c)(1) requires the attorney issuing the subpoena to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena, and directs that the court "shall enforce this duty." That language suggests that "this duty" owed to non-parties is *in addition to* the duties imposed by Rules 11 and 26(g).

Thus, good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that Rule. *Liberty Mutual Ins.*

---

motion, or other paper is singed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000).

A violation of the duty under Rule 45(c)(1) may also be a violation of other rules relating to discovery (*see Shubov v. Rakita*, 253 B.R. 540, 548-50 (B.A.P. 9th Cir., 2000)(Klein concurring), but it does not follow that in order to enforce that duty the court must find that the duties and standards of other rules have been violated.

Thus, the City's position--that in order to award attorneys' fees and costs under Rule 45 the Court must find that Rule 11 standards have been violated--is rejected. The standard is set out in Rule 45(c)(1): that the court must determine if there has been a breach of counsel's duty to take reasonable steps to avoid imposing undue burden or expense upon the person subject to the subpoena.

## DISCUSSION

The City's Opposition sets out why the City feels that its subpoenas were necessary and thus not frivolous or in bad faith. (City's Opp'n at 2-6.) As discussed above, the subpoenas need not be frivolous or in bad faith to justify awarding fees to the Petitioners. Therefore, this Court makes no ruling on whether the subpoenas were frivolous or in bad faith, except to note that whether the information sought is relevant to the issues in the lawsuit is part of the analysis of whether the burden is "undue," and the City did not prevail on that issue either in this Court or with the District Judge. The threshold issue here, whether the subpoenas imposed an undue burden on the recipients, was briefed and argued at length to this Court and to the District Judge. This Court determined, and the District Judge agreed, that even with the modification proposed by the City, there were "ample reasons for concluding that the subpoenas imposed an undue burden." *BAGC v. City of Chicago,*

No. 96 C 1122, 2001 WL 1414192, *1 (N.D. Ill. Nov. 9, 2001)(Moran, J.).

The City also argues that there was no undue burden imposed because the subpoenas were quashed and thus the recipients never had to produce any documents in response to the subpoenas. (City's Opp'n at 7.) On the contrary, one court has stated:

> When a subpoena should not have been issued, literally everything done in response to it constitutes "undue burden or expense" within the meaning of Civil Rule 45(c)(1). It is similarly "undue" to have to contend with a motion to compel compliance with an illegitimate subpoena.

*Shubov*, 253 B.R. at 547. This Court is not prepared to say that every time a court quashes a subpoena the subpoenaed non-party is entitled to attorney's fees. However, the City's argument, if accepted, would eviscerate the protection provided by Rule 45(c)(1).

The next step under Rule 45(c)(1) is to determine whether the City took "reasonable steps" to avoid imposing undue burden or expense. That requires some review of the history.

The ECA states that in June 1998, the City had served a subpoena upon the ECA in response to which the ECA produced 223 pages of documents. (ECA's Reply Mem. at 1-2.) In October 2000, the City served the ECA with another subpoena seeking an additional 34 categories of documents, and thereafter the City served 58 of the ECA's contractor members with subpoenas seeking 49 categories of documents covering 28 years. (*Id.* at 2.) The present petitions relate to those subpoenas served in late 2000.

It cannot be argued (indeed, the City does not argue) that in drafting and sending out that wave of subpoenas in 2000 the City took *any* steps to avoid imposing undue burden or expense. The City sent out approximately *five hundred* subpoenas with identical 49-category boilerplate Riders to contractors large and small. There is no indication that the City attempted to tailor its subpoenas

*in any way* to the nature of the recipients, the types of documents they would be likely to produce, or their resources to respond.

The City relies on its proposed modification of the subpoena, and argues that it attempted to amicably resolve objections with all parties. (City's Opp'n at 7.) As reflected in the Status Report filed with the Court [Dkt # 150], the City resolved its disputes with some of the contractors. However, at the oral argument and in the Status Report, counsel for various parties reported frustration at the City's insistence on compliance with the subpoenas that were overly broad even under the City's proposed modification. For example, in the Status Report, the UCA expressed frustration that, after several meetings with the City's counsel in an attempt to resolve disputes, the City continued to insist on production of all documents relating to any claims and complaints, even claims relating to age discrimination, the Americans with Disabilities Act and the Consolidated Omnibus Budget Reconciliation Act. (Status Report at 23.)[3] At the oral argument, counsel for the ECA recounted his unsuccessful negotiation with the City to lessen the burden on his clients. (Tr. of July 23, 2001 at 48-49.)

It is not necessary to decide whether a party that serves an unduly burdensome subpoena, thus requiring the responding non-party to retain counsel to negotiate a modification, can avoid sanctions under Rule 45(c)(1) by subsequently agreeing to a reasonable scope. *Cf. Tiberi v. Cigna Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994)(counsel's affidavit, which the district court erroneously excluded,

---

[3] Similarly, Schindler Elevator Corporation (which has not sought fees) argued that it does very little subcontracting, but as a maker of heavy use items like elevators and escalators, "one can only imagine the sheer volume of documents relating to a single area, such as personal injury cases, that have been generated over the 22-year period for which the City is requesting documents." (Status Report at 20-21.) Schindler argued that there was no justification for requiring it to review and produce every document from every single lawsuit complaint or claim involving it or any of its subsidiaries, partners or affiliates. (*Id.* at 21.)

provided sufficient evidence of attempt to negotiate reasonable scope to initially overbroad subpoena to avoid sanctions under Rule 45(c)(1).) That is not what happened here. The City not only responded to the motions to quash and the objections, but also filed its motion to compel compliance with the subpoenas. Those subpoenas were overly broad even considering the proposed modification, and included requiring production of all documents relating to any claim, complaint or arbitration, and documents relating to hiring, use of apprentices and sponsorship of individuals for membership in a trade union, as well as the catch-all: all documents generated by any person or entity related to the subject matter raised in the lawsuit. (Order at 8.) This Court finds that the City breached its duty to take reasonable steps to avoid imposing undue burden and expense on the subpoena recipients.

Rule 45(c)(1) provides that the court "shall" impose upon the party or attorney in breach of that duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee. In this case, the Petitioners seek attorneys' fees and costs. No lost earnings are sought.

The issue of the appropriate sanction requires careful consideration; the collective amount sought is large: $215,000. The City points out that none of the Rule 45(c)(1) cases cited by the parties awarded an amount close to that.[4] (City's Opp'n at 9-10.) On the other hand, this case presents a far different situation from any of the cases cited. In each of the cases cited, the sanction was imposed for the undue burden caused to a limited number of non-parties (usually not more than one) by the sending of a single improper subpoena. In the present case the City served 500 improper

---

[4] *Cf. Brandt v. Schal Assoc.* 131 F.R.D. 512 (N.D.Ill. 1990), *aff'd,* 960 F.R.D. 640 (7th Cir. 1992) (awarding in excess of $440,000 for violation of Rule 11).

subpoenas upon 500 non-parties. The City moved to compel production in response to those subpoenas. (Def. City of Chicago's Resp. to Third Party Mot. to Quash and Mot. to Compel Resp. from Third Party Contractors.) [Dkt # 120.] Numerous contractors and trade associations filed motions to quash or objections to the subpoenas, a number of the trade associations like the ECA, the UCA and the Illinois Road Builders filing on behalf of the association and the association members who had been individually subpoenaed. *See* App. A to Order. Fortunately for the City, only three of those movants and objectors filed fee petitions. If each of the 500 subpoenaed entities had filed separate objections or motions to quash, and each of those 500 were granted only the smallest amount ($507.50) identified as a sanction for violation of Rule 45(c)(1)in the cases cited by the City, the total would be $253,750, more than is sought here.[5] If each were granted the largest amount ($6,533) identified in those cases, the result would be a staggering $3,266.500.[6] "The message [of Rule 45(c)(1)] is that one who issues a subpoena in doubtful circumstances is taking a pronounced risk." *Shubov,* 253 B.R. at 547. The City took a very serious risk under Rule 45(c)(1) when it served 500 subpoenas of the breadth that were served here.

Significantly, Rule 45(c)(1) has not been revised to incorporate the limitations on sanctions that were included in the 1993 revisions to Rule 11. Those revisions expressly limit sanctions imposed to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). In contrast, the sanctions authorized by Rule 45(c)(1) for breach of a duty to the person subject to the subpoena suggest an intention to compensate for

---

[5] *In re Edgewood General Partnership*, 166 B.R. 188 (Bankr. M.D. Fla 1994) (awarding $507.50 as sanction for violation of Rule 45(c)(1)).

[6] *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.* 161 F.R.D. 86 (N.D. Cal 1995) (awarding $6533 as sanction for violation of Rule 45(c)(1)).

breach of that duty, as evidenced by the explicit authority to award "lost earnings." The compensatory intention is reinforced by the Advisory Committee Notes that "[t]he liability may include the cost of fees to collect attorneys' fees owned as a result of a breach of this duty." However, the Petitions must be reviewed in light of the limitation to "reasonable" fees.

The City argues:

> This Court should also deny the petitions of the ECA and the UCA on their face, given the manifest unreasonableness of the amounts of these petitions in connection with a procedural motion to quash subpoenas. . . . It shocks the conscience that the ECA and UCA collectively seek nearly $210,000 to quash subpoenas that they themselves believe were patently unreasonable.

(City's Opp'n at 8.) The City's argument completely ignores the year-long pitched battle that the City fought to enforce its subpoenas. Once again, a review of history is necessary, and it is summarized in Appendix A hereto.[7] The City's attempt to minimize this history as a "procedural motion" verges on frivolous. Over the course of a year, the City filed several hundred pages of briefs, motions and exhibits in an effort to compel compliance with its subpoenas. In those papers the City discussed a range of issues from the scope of evidence that would be admissible at trial to whether non-parties have standing to raise relevancy objections to subpoenas. The Petitioners were required to respond to those arguments, including the City's arguments that the information that it sought was relevant to the issues in the underlying case. It hardly befits the City now to argue that the subpoenas were so patently overbroad that the Petitioners should not have fought back on the issues but should have rested on the patent overbreadth of the subpoenas.

The ECA's request for fees and costs is the largest of the three, but the ECA's counsel took

---

[7] The history set out in Appendix A relates only to filings by the three Petitioners. Other motions and briefs were filed by other parties, movants and objectors. It also omits the Petitioners' requests for fees.

the laboring oar in briefing many issues relating to the subpoenas, and other movants and objectors adopted the ECA's work. *See, e.g.*, Kiferbaum's motion to adopt the ECA's opposition to the City's objections to the Order. [Dkt # 219.] *See also* Status Report at 12, 16. This Court expressly encouraged the movants and objectors to adopt the arguments of others where appropriate to minimize the burden on the Court as well as the legal fees that were being incurred by the subpoena recipients. This benefits the City as well, because had counsel for those other subpoena recipients briefed every issue to the extent the ECA's counsel did, the City would most likely be facing comparable fee petitions from those counsel as well. Thus, the City's request that the ECA's and UCA's petitions be denied entirely as unreasonable is itself denied.

Likewise, the City's objection that the ECA's and the UCA's efforts were duplicative of the BAGC's efforts is overruled. There is some irony in the City's objection, because the City argued in its Response to the Motions to Quash that the BAGC had no standing to raise any objections to the subpoenas. (City's Resp. at 34-35, n. 19.) Thus, under the City's view, any and all arguments in opposition to the subpoenas had to be made by the movants and objectors like the ECA and the UCA. The movants and objectors were certainly not required to leave their resistance to the subpoenas in the hands of a party over whom they had no control or to rely on the BAGC to make arguments on their behalf. Furthermore, although the positions of the BAGC and the movants and objectors were similar, the arguments were not identical, and the movants and objectors went beyond the general arguments to present specific factual background demonstrating the burdensomeness of the subpoenas. *See, e.g.*, Affidavit of Thomas Flynn, one of the owners of Flynn and Hunter Electric, a company subpoenaed by the City, and Affidavit of Larry Cleys, an owner of Mid-America Electric, a company subpoenaed by the City, which were attached to the ECA's Memorandum of Law in

Support of its Motion to Quash. [Dkt # 90.] *See also* Affidavit of Paul Chuma, a vice-president of Kiferbaum in support of its Motion to Quash. (Mot. for Leave to Suppl. Mot. to Quash.) [Dkt # 89.] Thus, the City's objection is both factually and legally deficient.

In addition to those general objections, the City has also made particular objections (City's Opp'n at 10-11), and the petitions submitted and exhibits thereto have been individually reviewed by this Court. Certain of the City's objections are sustained and others are overruled.

The ECA's petition

The ECA seeks fees for time expended by four attorneys and a paralegal: Gerald Skoning, who has been practicing law since 1967 specializing in labor law and employment related litigation, and billed at that time at $330 and $340 per hour; Douglas Darch, who as been practicing law since 1980 and billed at that time at $290 and $305 per hour; Abigail Roche (previously Kell) who has been practicing law since 1999 and billed at that time at $145 and $160 per hour; Brian Stolzenbach, who has been practicing law since 2000 and billed at that time at $150 per hour; and Derrick Brummell who has been a paralegal since 1998 and billed at that time at $120 per hour. (ECA's Pet., Ex. 2, Decl. Gerald D. Skoning, ¶¶ 3-7.) Mr. Skoning's Declaration states that he prepared Schedule A to the ECA's Petition, and that all of the hours were necessary to the ECA's successful attempt to quash the subpoenas, and that all fees and costs sought have been or will be billed to the ECA. (*Id.* ¶ 8.)

The ECA's Petition reflects that most of the time was spent by two attorneys, Mr. Skoning, the senior attorney, and Mr. Stolzenbach, the junior attorney. Relatively smaller amounts of time were spent by Ms. Roche and Mr. Darch. Substantial amounts of the legal research were done by

attorneys and the paralegal who billed at lower rates. The Court finds that the staffing was appropriate and the rates charged are reasonable in light of the experience of counsel and prevailing rates in the legal community.[8]

The City's objection that only a minimal amount of time was devoted to communicating with the subpoenaed contractors is overruled. (City's Opp'n at 10.) That fact does not demonstrate that the ECA's request for attorneys' fees is unreasonable or in bad faith.

The City's objection to time spent in preparing the ECA's reply briefs is also overruled. The City filed two Responses and Motions to Compel, one directed to the contractors, including the ECA's members [Dkt # 120] and one directed to the trade associations, including the ECA [Dkt # 119]. The City's Response and Motion to Compel to the contractors contained 36 pages of argument, including 19 single-spaced footnotes (some of which ran more than half a page) as well as 20 exhibits. The Response and Motion to Compel to the trade associations was a separate brief of 18 pages and two exhibits. It is not surprising that it took the ECA quite a while to review and analyze those filings, and to prepare a response.

The City's objection to the 18.75 hours of time regarding the brief that the ECA moved for leave to file, but then withdrew (at this Court's urging) because the arguments were made at oral argument is sustained, and those hours are deducted from the total. (City's Opp'n at 10-11.)

The City's objection to time spent by more than one attorney attending court hearings is sustained. Although the presence of more than one attorney at a court appearance can at times benefit the client, it is more than the City can be required to pay in these circumstances. Fees for

---

[8] The City did not argue that the billing rates sought in any of the petitions were unreasonable.

time for more than one attorney at a hearing are subtracted from the total.

The City's objection that the ECA's petition seeks fees for time without even a remote connection to the motion to quash is overruled, with a few exceptions. (City's Opp'n at 11-12.) The implications for this case of the decisions by Judge Grady and by the Seventh Circuit in *BAGC v. County of Cook* were argued extensively by the City as well as the movants and the BAGC in connection with the subpoenas. Thus, the ECA's counsel study of those decisions and various filings in that case was directly related to the motion to quash. However, the motion to quash did not require that counsel to attend the oral argument of the *BAGC v. County of Cook* case in the Seventh Circuit, so fees for time to attend that argument are subtracted. Because a basic issue in the "undue burden" analysis is the relevance of the material sought to the issues of this case, the time spent by ECA's counsel in reviewing the pleadings filed in this case was reasonably required in connection with the motion to quash. Likewise the City's bid process is the subject of this lawsuit and counsel may reasonably have researched that process to make arguments regarding the relevance of the materials sought in the subpoenas to that process. However, researching possible fraud in that system is too remote from the subpoenas to be recoverable, so the City's objection to time for that is sustained. The City's objection to the entry "miscellaneous legal research" on some of Mr. Skoning's time entries might be well taken if that entry appeared in isolation without anything to link it to a reasonably necessary task. However, examining each of those entries shows that they appear in the context of Mr. Skoning's performing tasks like preparing the draft motion to quash on November 15 and 16, 2000. (ECA's Pet., Sch. A at 1.) Thus that objection is overruled.

In summary, the Court sustains the City's objection to the time and associated fees sought by the ECA that are set out in Appendix B, and the amount awarded reflects deduction of those fees.

The UCA seeks fees for time spent primarily by lead counsel Gregory R. Meeder, who has been practicing law since 1983 who billed at that time at $235 per hour, and also for other attorneys who worked on the matter including Mark Shapiro, who graduated from law school in 1974 and billed at that time at $250 per hour, and Stephen Kikoler a managing partner who graduated from law school in 1969 and billed at that time at $250 per hour. (Fee Pet. of Underground Movants, Ex. A, Aff. Gregory R. Meeder ¶¶ 2, 5.) A number of legal assistants and staff also worked on the matter. (*Id.* ¶ 5.) Mr. Meeder states that he reviewed all of the time and exercised his billing judgment to eliminate time spent on non-productive or duplicative efforts. (*Id.* ¶ 4.) The Court finds that the staffing was appropriate and the rates charged are reasonable in light of the experience of counsel and prevailing rates in the legal community.

The City objects that the UCA's petition seeks fees for duplicative entries. (City's Opp'n at 12.) However, a careful review of the invoices attached to the UCA's petition shows that the entries are not duplicates. It is apparent that Mr. Meeder and his colleagues prepared invoices separately for their representation of the UCA as an entity and for their representation of the member contractors, and divided up their time on various tasks between those two clients. Because the City moved to compel responses to its subpoenas from both the trade associations and the individual contractor members, time spent moving to quash all of those subpoenas is recoverable. However, the objection to the time spent by more than one counsel attending the status hearing on February 8, 2001 is sustained, and the time spent by co-counsel Mark Shapiro ($477.00) will be subtracted. The City's objection that time was spent on activities "unrelated" to the motion to quash (City's Opp'n at 12) is overruled. Rule 45(c)(1) provides that the sanction is for breach of the duty to avoid

17

imposing an undue burden; that sanction is not limited to the time required to prepare and file the motion to quash. The time that the UCA's counsel spent in attempting to resolve the issues with the City's counsel is also compensable, as is the time that the UCA's counsel spent coordinating efforts to represent dozens of individual contractors.

Kiferbaum's petition

Kiferbaum seeks time spent by attorney William Kohn who billed at that time at $200 per hour, Daniel Bronson, Kiferbaum's corporate counsel who billed at that time at $225 per hour, and Gina Llanas, Mr. Bronson's associate, who billed at that time at $125 per hour. Both Mr. Kohn and Mr. Bronson state that Kiferbaum has paid those rates. (Kiferbaum's Request, Aff. William B. Kohn, ¶¶ 2, 5; Aff. Daniel R. Bronson, ¶¶ 2-3, 5.)

The invoices attached to Kiferbaum's petition request fees for time Mr. Kohn spent preparing and filing Kiferbaum's motion to quash, and appearing in court for hearings, and for the relatively small amount of time (7 hours) Mr. Bronson and Ms. Llanas spent dealing with the subpoena as Kiferbaum's corporate counsel. The City has not stated any specific objections to the time sought by Kiferbaum.

The Court finds that the rates charged and the time spent were appropriate and reasonable.

## CONCLUSION

For the foregoing reasons, the Court finds that reasonable attorneys' fees and costs to compensate the ECA, the UCA and Kiferbaum for the City's breach of its duties under Rule 45(c)(1) are as follows:

The ECA: $157,277.75

The UCA: $ 47,826.48

Kiferbaum: $ 6,745.00

Because the City is represented in this action by both outside counsel and the Corporation Counsel and Law Department of the City, all of whom are presumed to have agreed to the strategy of serving the subpoenas, this obligation is imposed jointly and severally upon the City and its counsel of record, who shall pay those amounts to those entities within 21 days of this Order.

**IT IS SO ORDERED.**

GERALDINE SOAT BROWN
**United States Magistrate Judge**

**DATED: May 13, 2002**

**Appendix A**

History of the Petitioners' filings and actions regarding the City's subpoenas, as reflected on Court's docket.

| Date | Description | Docket Number |
|---|---|---|
| Nov. 16, 2000 | The ECA filed a motion to quash the subpoenas served on it and its members. | 75 |
| Dec. 07, 2000 | Kiferbaum filed a motion to quash the subpoena served on it. | 88 |
| Dec. 12, 2000 | Kiferbaum moved for leave to file a supplement to its motion. | 89 |
| Dec. 12, 2000 | The ECA filed a memorandum of law in support of its motion. | 90 |
| Dec. 19, 2000 | The District Judge set a briefing schedule on the various motions to quash, requiring the City to file its response by Jan. 5, 2001. | 94 |
| Jan. 03, 2001 | The City moved for additional time to respond to the motions to quash and to file its motion to compel. | 117 |
| Jan. 16, 2001 | Underground Contractors Assn. and members filed their objections to the subpoenas and motion to quash. | 113, 121 |
| Jan. 16, 2001 | The City filed a motion for leave to file instanter a brief in excess of 15 pages. | 118 |
| Jan. 16, 2001 | The City filed its combined Response to Third Party Motions to Quash and Motion to Compel Responses from Third Party Associations, consisting of 18 pages of argument and 2 exhibits, and its combined Response to Third Party Motions to Quash and Motion to Compel Response from Third Party Contractors, consisting of 36 pages of argument and 20 exhibits. | 119, 120 |
| Jan. 23, 2001 | The UCA and their members filed their corrected Motion to Quash. | 122 |
| Jan. 23, 2001 | The City's motion to file brief in excess of 15 pages was granted. | 123 |

1

| Date | Description | Docket Number |
|---|---|---|
| Feb. 06, 2001 | The ECA moved for leave to file a reply brief in excess of 15 pages. | 136 |
| Feb. 06, 2001 | The ECA filed its reply brief consisting of 24 pages of argument and 6 exhibits. | 137 |
| Feb. 07, 2001 | The Underground Contractors filed its reply brief. | 134 |
| Feb. 08, 2001 | Judge Moran referred all motions to quash and discovery matters to this Court. | 135 |
| Feb. 08, 2001 | The ECA's motion to file reply brief in excess of 15 pages was granted. | 138 |
| Feb. 08, 2001 | Kiferbaum filed its reply in support of its motion to quash. | 139 |
| Mar. 26, 2001 | An initial status was held by this Court. Attorneys for the ECA, the UCA and Kiferbaum appeared. The City was given leave to file a supplemental brief. Parties, movants and objectors were given leave to file responses to that supplemental brief. | 151 |
| Mar. 30, 2001 | The City filed a supplemental brief in opposition to the motions to quash and in support of its motions to compel. | 156 |
| Apr. 16, 2001 | The ECA filed a reply to the City's supplemental brief. | 161 |
| Apr. 24, 2001 | The City filed a motion for leave to file a reply in support of the collateral estoppel issue. | 173 |
| Apr. 27, 2001 | The ECA filed an opposition to the City's motion for leave to file its reply in support of the collateral estoppel issue. | 164 |
| Apr. 30, 2001 | The City's motion for leave to file a reply in support of the collateral estoppel issue was granted. | 174 |
| Apr. 30, 2001 | The City filed its reply in support of the collateral estoppel issue. | 175 |
| Apr. 30, 2001 | Oral argument was held on certain issues relating to the subpoenas. Counsel for the ECA, the UCA and Kiferbaum appeared in court and argued. | 174 |

| Date | Description | Docket Number |
|---|---|---|
| May 02, 2001 | The ECA filed a motion for leave to file a reply to the City's "narrow tailoring argument." | 171, 172 |
| May 04, 2001 | The City filed an opposition to the ECA's motion for leave to file a reply. | 168 |
| May 04, 2001 | The ECA's motion to file a reply to the City's "narrow tailoring argument" was granted. | 176 |
| Jun. 11, 2001 | This Court held a status hearing and issued a memorandum opinion on a number of issues relating to the subpoenas. | 177 |
| Jul. 20, 2001 | This Court heard argument on the impact of the Seventh Circuit's opinion in *BAGC v. County of Cook*, 256 F.3d 642 (7th Cir. 2001) on the issues on the subpoenas. Counsel for the ECA, the UCA and Kiferbaum appeared in court and argued. | 186 |
| Jul. 20, 2001 | The ECA moved to file a brief on the decision in *BAGC v. County of Cook*, which was withdrawn at the argument. | 185, 186 |
| Aug. 29, 2001 | This Court issued the Order granting the motions to quash the subpoenas, sustaining the objections to the subpoenas, and denying the City's motions to compel compliance with the subpoenas. | 198 |
| Sep. 13, 2001 | The City filed objections to the Order with the District Judge. | 203 |
| Sep. 27, 2001 | The ECA filed a motion with the District Judge to set a briefing schedule on the objections, which was granted. | 208, 209 |
| Oct. 17, 2001 | The ECA filed its opposition to the City's objections to the Order. | 214 |
| Oct. 24, 2001 | Kiferbaum filed a motion to adopt the ECA's opposition to the City's objections, which was granted. | 219, 221 |
| Oct. 31, 2001 | The City filed its reply in support of its objections to the Order. | 224 |
| Nov. 09, 2001 | The District Judge overruled the City's objections to the Order. | 225 |

**Appendix B**

| Date | Attorney Name | Hours | Amount | Description |
|---|---|---|---|---|
| 02/08/01 | A. Kell | 2.00 | 320.00 | Preparation for and attend status hearing. |
| 02/08/01 | B. Stolzenbach | 1.00 | 150.00 | Preparation for and attend status hearing before Judge Moran. |
| 02/26/01 | D. Darch | 1.50 | 457.50 | Preparation for and representation of ECA at status conference before Judge Brown; telephone conference M. Nemshick regarding same. |
| 02/26/01 | A. Kell | 1.50 | 240.00 | Preparation for and attend status conference before Judge Brown. |
| 04/12/01 | B. Stolzenbach | 1.00 | 150.00 | Research regarding fraud in City's MBE system; review and revision of supplemental reply. |
| 04/30/01 | D. Darch | 1.50 | 457.50 | Preparation for and attend hearing on motion to quash subpoenas. |
| 04/30/01 | B. Stolzenbach | 1.50 | 225.00 | Preparation for and attend oral argument; preparation of draft motion for leave to file response to narrow issue raised at oral argument; preparation of draft response to said issues raised in oral argument. |
| 05/10/01 | D. Darch | 0.25 | 76.25 | Report of oral argument in Cook County AAP cases. |
| 05/10/01 | B. Stolzenbach | 1.00 | 150.00 | Preparation for and attend oral argument in Cook County case; preparation of memorandum summarizing argument. |
| 07/18/01 | B. Stolzenbach | 1.50 | 225.00 | Preparation of supplemental brief regarding motion to quash. |
| 07/19/01 | G. Skoning | 5.00 | 1,700.00 | Preparation of supplemental brief on 7th Circuit's decision in *Bagc v. Cook County*; continued preparation for hearing. |
| 07/19/01 | B. Stolzenbach | 3.00 | 450.00 | Preparation of supplemental brief in support of motion to quash. |