

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1122 | **DATE** | 10/16/2002 |
| **CASE TITLE** | Builders Association etc. Vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)    ☐ Local Rule 41.1    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant City of Chicago objects to the March 26, 2002 Memorandum and Order of Magistrate Judge Geraldine Brown. We overrule the substantive objections and leave to another day the issue of fees.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 17 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 382 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | CV docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | WAH courtroom deputy's initials | 2002 OCT 15 PM 2:55 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BUILDERS ASSOCIATION OF GREATER )
CHICAGO, )
)
                Plaintiff, )
)
vs. ) No. 96 C 1122
)
CITY OF CHICAGO, a municipal corporation, )
)
                Defendant. )

DOCKETED
OCT 17 2002

## MEMORANDUM OPINION AND ORDER

Defendant City of Chicago objects to the March 26, 2002 Memorandum and Order of Magistrate Judge Geraldine Brown. We overrule the substantive objections and leave to another day the issue of fees.

The City wants trade unions and union apprenticeship programs to produce documents responsive to 26 subpoenas. Why it wants them is not entirely clear. There is one suggestion that it wants to interview persons who have washed-out of apprentice programs, but the scope of the subpoenas is far broader than that. For now, we assume that the City wishes to establish a long entrenched pattern of discrimination in the building trade unions that has adversely affected the ability of minorities and women to become contractors capable of bidding on City contracts.

In another thorough opinion Magistrate Judge Brown explained why she believed that the subpoenas should be quashed. We overturn that conclusion only if it is clearly erroneous or contrary to law. And the ruling is clearly erroneous only if we are left with the definite and firm conviction that a mistake has been made. We are not at all convinced.

382

That conclusion requires some review of the present state of the law respecting affirmative action programs in public contracting -- no simple task. "The Supreme Court's declarations in the affirmative action area are characterized by plurality and split opinions and by the overruling of precedent. This fractured prism complicates the task of lower courts in both identifying and applying an appropriate form of equal protection review." Adarand Constructors, Inc. v. Slater, 228 F.3d 1147, 1161 (10th Cir. 2000). But some assertions are beyond reasonable dispute and some strains seemed to have emerged.

Following the contested presidential election of 1876, Plessy v. Ferguson. 163 U.S. 537 (1896), and earlier cases, this nation retreated from the promise of the Fourteenth Amendment for almost a century. Even when we began to emerge from that long twilight the construction trades and related craft unions resisted change and long remained bastions of racial discrimination (and gender discrimination, although, for the sake of simplicity, we will confine our comments to racial discrimination). Even when overt racial discrimination has been declared unlawful, and even if its overt manifestations have been significantly reduced (and how significantly reduced is a matter much disputed), the lingering effects of that pervasive discrimination are powerful. *See* Cunningham, Loury and Skretney, *"Passing Strict Scrutiny: Using Social Science to Design Affirmative Action Programs,"* 90 Geo. L.J. 835 (2002).

The Fourteenth Amendment proclaims that no person shall be denied the equal protection of the law, and that protection has been extended to federal action. To what extent then, if at all, can the federal government, the states, and local governments use racial preferences as a means of remedying the effects of racial discrimination? Here we must distinguish between Congress and the states and local governments. The Fourteenth

Amendment expressly grants to Congress the power to enforce equal rights. That led a plurality in <u>City of Richmond v. J. A. Croson Co.</u>, 488 U.S. 469 (1989), to recognize a greater power in Congress to deal with the legacy of discrimination by racial preferences than in the states and local governments, even though its actions, like those of the states and local governments, are subject to strict scrutiny. <u>Adarand Constructors, Inc. v. Pena</u>, 515 U.S. 200 (1995). Racial classifications, the Court recognized, are dangerous tools, as illustrated by <u>Korematsu v. United States</u>, 323 U.S. 214 (1944).

But we are here dealing with a municipal ordinance, not a federal statute, and <u>City of Richmond v. J. A. Croson Co.</u>, *supra*, teaches that the City can use racial classifications only as a remedy for its own past discrimination or its passive participation in a system of racial exclusion. What is "passive participation"? Whether and when to use racial preferences as a remedy for past discrimination fractured the Supreme Court in <u>City of Richmond v. J. A. Croson Co.</u>, *supra*. Some said it was never appropriate except as a remedy for specific victims of discrimination. Others were prepared to defer to legislative judgments that served important government objectives and were substantially related to achievement of those objectives. The prevailing view then, and still, as best we can determine, is that racial classifications can be used as a remedy for past discrimination by the local government or its passive participation, but it cannot be used as a tool to combat societal discrimination.

Where do we draw the line between passive participation and general societal discrimination? One can envision a scenario in which local government had required that contractors be union members to bid on municipal contracts, well knowing (even not well knowing) that the unions threw up obstacles to union membership by minorities. Or perhaps

the local government insisted that contractors be members of a contractors group because that group had an excellent program for certifying competence, even though that group discriminated against minorities. The local government would not itself be actively discriminating in those circumstances, but we think that would make it "a kind of joint tortfeasor, coconspirator, or aider and abettor," <u>Builders Association of Greater Chicago v. County of Cook</u>, 256 F.3d 642, 645 (7th Cir. 2001), justifying using racial classification as a remedy. But here the City does not require that contractors have any union affiliation or that construction workers be members of a union, so long as they are paid comparable wages. <u>City of Richmond v. J. A. Croson, Inc.</u>, *supra*, at 498, expressly referred to barriers to union membership and training programs as an element of societal discrimination that did not justify racial preferences as a remedy.

Can the concept of passive participation be stretched further? It has been argued that it can. *See e.g.*, Ayers and Vars, *"When Does Private Discrimination Justify Public Affirmative Action?"* 98 Columbia L.Rev. 1577 (1998). For instance, if there is discrimination in the private market the share of the entire market going to minority enterprises is lessened unless government steps in to increase that share by preferring minority enterprises. And, certainly, government has a compelling interest in remedying past or present discrimination. <u>Engineering Contractors Association of South Florida, Inc. v. Metropolitan Dade County</u>, 122 F.3d 895, 906 (11th Cir. 1997), *cert. denied*, 523 U.S. 1004 (1998). The court there expressed the view that, accordingly, the true test of an affirmative action is usually not the nature of the government's interest but rather the adequacy of the evidence of discrimination offered to show that interest.

We think the nature of the discrimination more properly bears upon the scope of constitutionally permissible remediation. A local government can sanction a contractor for present discrimination. It can establish race-neutral programs for small and fledgling enterprises that primarily benefit minority enterprises as a remedy for the lingering effects of past discrimination. But we believe that the Seventh Circuit, in <u>Builders Association of Greater Chicago v. County of Cook</u>, *supra,* read <u>Croson</u> and its progeny as restricting the remedy of racial preferences to instances in which the local government has itself discriminated or has been in some sense complicit in private discrimination.

In <u>Adarand Constructors, Inc. v. Slater</u>, *supra,* the court did rely upon the sort of evidence defendant seeks here. That, however, related to a federal program. While the court declined to address the precise relationship between the Fourteenth Amendment and the power of Congress (at p.1165), it was mindful that it was dealing with a congressional enactment national in scope, a point recognized in <u>Sherbrooke Turf, Inc. v. Minnesota Department of Transportation</u>, 2001 WL 1502841 (D. Minn.). A municipality can attack discrimination directly. It can seek to eliminate the lingering effects of past discrimination by race-neutral programs providing assistance to newer and smaller enterprises. But it cannot use racial classifications as a remedy for general societal discrimination, and the information sought by the subpoenas falls on that side of the line.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 16, 2002.