Minute Order Form (06/97)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1122 | **DATE** | 4/1/2003 |
| **CASE TITLE** | Builders Association etc. Vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The parties bring a total of 15 pretrial motions seeking to bar evidence and restrict triable issues. For the following reasons, plaintiff's motion in limine number six is granted, and its remaining motions in limine are denied. Defendant's four motions are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 0 2 2003 | 508 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 03 APR -1 PM 4:03 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BUILDERS ASSOCIATION OF GREATER )
CHICAGO, )
)
Plaintiff, )
)
vs. ) No. 96 C 1122
)
CITY OF CHICAGO, a municipal corporation, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

The parties bring a total of fifteen pretrial motions seeking to bar evidence and restrict triable issues. For the following reasons, plaintiff's motion *in limine* number six is granted, and its remaining motions *in limine* are denied. Defendant's four motions are denied.

As a preliminary matter, many of the motions concern the City of Chicago's (the City) required showing of discrimination. We address this topic generally before turning to the individual motions. Under the Seventh Circuit's reading of <u>City of Richmond v. J.A. Croson Co.</u>, 488 U.S. 469 (1989), the City can use gender and racial classifications in public contracting only if it has discriminated in the past – either by directly discriminating against a class of people or in some way being complicit in private discrimination. <u>Builders Association of Greater Chicago v. County of Cook</u>, 256 F.3d 642 (7th Cir. 2001)(<u>BAGC v. Cook</u>). Put another way, the classifications cannot be justified merely as a remedy for societal discrimination. *Id.*

The parties spend much of their briefs arguing about the amount and types of evidence the City will need to prove in order to establish the requisite discrimination. The City relies on a Tenth Circuit opinion which allowed a city to meet its burden by offering enough "strong

evidence" of discrimination in the local construction industry from which to infer the city's participation. <u>Concrete Works of Colorado, Inc. v. City and County of Denver</u>, ___ F.3d ___, 2003 WL 294582, *37. The Seventh Circuit does not appear to read <u>Croson</u> as liberally. <u>BAGC v. Cook</u>, *supra*.

But, a different issue is presented by the motions before us – whether evidence of private discrimination in the construction industry is admissible. We answer this question mindful that motions *in limine* which seek to exclude evidence should be granted only if the evidence sought to be barred is clearly inadmissible for any purpose. <u>Aquino v. Automotive Service Industry Association</u>, 93 F.Supp.2d 922, 923 (N.D.Ill. 2000). Evidence of industry discrimination alone will not satisfy the discrimination test articulated by the Seventh Circuit. It may be potentially relevant as circumstantial evidence of the City's alleged discrimination, though, enough to satisfy the minimal motion *in limine* standard, particularly in view of the unsettled law in this area. In reviewing these motions we are mindful that we are undoubtedly only a way-station in this litigation. If others will make the final decision, either the Seventh Circuit or beyond, we think it appropriate to reach considered factual determinations on a variety of issues based on the available evidence, even though we may ultimately conclude that those determinations are irrelevant to, or of marginal help in reaching, a decision on the constitutional issue. Accordingly, in this non-jury case, we are disposed to hearing the evidence without a rigorous analysis of its relevancy. That will, of course, tend to lengthen the trial, but it will, we believe, provide a more complete record both for this court and on appeal.

### BAGC's Motion No. 1

Builder's Association of Greater Chicago (BAGC or plaintiff) asks us to preclude the City from offering post-enactment and post-litigation evidence. The Seventh Circuit requires that a public agency have a strong evidentiary basis to support its chosen remedy before adopting the remedy. <u>BAGC v. Cook</u>, *supra*, at 645. Because of this, plaintiff claims that any post-enactment evidence is irrelevant.

We must first consider what is meant by "post-enactment" evidence, and the cases are often not particularly clear about what they mean by that. It could mean evidence arising from the pre-enactment period but not developed then and not considered by the legislative body. It could mean evidence relating to the post-enactment period. In either event, we think such evidence is relevant.

The City should have produced strong evidence that the program was remedial in nature, that a compelling interest existed, before embarking on the M/WBE program. *See* <u>Shaw v. Hunt</u>, 517 U.S. 899, 909-10 (1996). A failure to have done so would have permitted a successful attack immediately after enactment and a district court might have acted well within its discretion in refusing to allow the government an extended time to marshall its facts. *See* <u>Associated Grand Contractors of Ohio, Inc. v. Drabik</u>, 214 F.3d 730 (6th Cir. 2000). A failure to have done so could also call into question whether the program was remedial or for another and improper purpose, <u>City of Richmond v. J. A. Croson Co.</u>, 488 U.S. 469, 493-494 (1989); *see* <u>Schurr v. Resorts International Hotel, Inc.</u>, 196 F.3d 486, 498 (3rd Cir. 1999).

The issue here, however, is not whether or not the City Council adequately did its homework in 1990, but whether the program was remedial in its inception and whether there

is sufficient evidence in 2003 of a compelling need and of narrow tailoring so as to cause the program to pass constitutional muster. The City did not have to prove its justification in 1990, but it does have to show that it then had, based on the evidence, a legitimate remedial purpose. The City has demonstrated, since then, continuing support for that program. Plaintiff is not seeking damages for, say, loss of a contract in 1991. It seeks prospective relief. The focus, then, assuming that the City can establish that it enacted the program for a legitimate purpose in 1990, should necessarily be upon whether there is a compelling need for such a program in 2003, and whether it is now a narrowly-tailored remedy for discrimination. If the focus is more upon the present than the past, then the passage of time cannot defeat plaintiff's claim, as we previously ruled. And if the City is to go forward with its contention that a failure to have such a program makes it a passive participant in discrimination, it must present evidence that there were and are discriminatory practices in the construction industry.

With few exceptions, *e.g.*, Rothe Development Corp. v. United States Department of Defense, 262 F.3d 1306 (Fed.Cir. 2001) (inadmissible to establish a strong basis but admissible for other purposes); West Texas Chapter of Associated Builders and Contractors, Inc. v. Board of Education of the Memphis City Schools, 64 F.Supp. 2d 714 (W.D. Tenn. 1999), courts have permitted post-enactment evidence in both senses of the term, both to buttress the original determination and to demonstrate that there remains a compelling need which the program is narrowly tailored to address, *e.g.*, Contractors Association of Eastern Pennsylvania, Inc. v. City of Philadelphia, 6 F.3d 990 (3rd Cir. 1993); Concrete Works of Colorado, Inc. v. City and County of Denver, 36 F.3d 1513 (10th Cir. 1994); Engineering Contractors Association of South Florida, Inc. v. Metropolitan Dade County, 122 F.3d 895 (11th

Cir. 1997). So do we. We do not read <u>BAGC v.Cook</u>, *supra*, to the contrary, where Judge Grady permitted the introduction of such evidence and the Court of Appeals, while noting that the enactment had to be supported by a strong evidentiary basis (at p.645), did not reject that post-enactment evidence as inadmissible. Plaintiff's motion number one is denied.

<u>BAGC 's Motion No. 2 and Defendant and Intervenors' Motion to Bar Relitigation</u>

On October 4, 1996, we granted five contract associations permission to intervene and defend the City's ordinance. <u>BAGC v. City of Chicago</u>, 170 F.R.D. 435 (N.D.Ill. 1996). These associations, Black Contractors United, Hispanic American Construction Industry Association, Federation of Women Contractors, Association of Asian Construction Enterprises and Illinois Association of Minority Contractors (intervenors), also intervened in <u>BAGC v. Cook</u>, 123 F.Supp.2d 1087 (N.D.Ill. 2000), in defense of the county ordinance. BAGC argues that the intervenors' anecdotal evidence of racial, ethnic and gender bias against M/WBE's in the construction industry is barred by *res judicata* and *collateral estoppel*.[1] Defendant and intervenors also move to preclude relitigation of issues addressed in <u>BAGC v. Cook</u>, based on the doctrine of *collateral estoppel*.[2]

*Res judicata* bars claims when there is an identity of the parties or their privies, an identity of the causes of action, and a final judgment on the merits. <u>La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.</u>, 914 F.2d 900, 907 (7th Cir. 1990). *Collateral estoppel* applies

---

[1] Testimony from association members is also offered in support of defendant's contention that the City ordinance fulfills a compelling government interest – economic development – separate from the goal of remediating discrimination. This proposed evidence is addressed in our response to BAGC's motion *in limine* No. 6.

[2] In part, defendant's motion to bar relitigation argues that collateral estoppel bars plaintiff from arguing to keep out evidence of discrimination that occurred after the ordinance was enacted. We have already denied BAGC's motion to keep out post-enactment evidence on substantive grounds and accordingly do not address this portion of defendant's motion.

where the issue to be litigated is the same issue involved in a prior action, the issue was actually litigated in the prior action, determination of the issue was essential to final judgment in the prior action, and the party precluded from relitigation was represented in the prior action. *Id.* at 906.

    In BAGC v. Cook, Judge Grady states:

> The proof of lack of solicitation was provided by the minority and women contractors who testified that they had not been solicited to submit bids on private work although they had persistently requested to be considered for private work. There was also testimony that M/WBE assist organizations never received any information from general contractors about the private projects they were bidding on. Finally, the general contractor witnesses admitted that, for the most part, they made no effort to solicit M/WBEs for bids and did not send project information to M/WBE assist organizations.
>     We believe this evidence does establish a systemic lack of any effort on the part of non-M/WBE general contractors to solicit bids specifically from M/WBEs for subcontract work. But whether this results in a systemic lack of opportunity to bid is another matter....
>     We conclude, therefore, that defendants have not established a systemic lack of opportunity for M/WBEs to bid on private contracts, the point to which their proof of failure to solicit was directed.
>     We turn to the second question, assuming there had been a showing of a systematic failure to solicit, and that this resulted in a systematic denial of the opportunity to bid, was the denial because of race, gender, or ethnicity?
> ...While the anecdotal evidence may be sufficient to make a case against the small number of general contractors the witnesses testified about, it stops there. It tells us nothing about bias on the part of any other general contractors and it does not establish a pervasive bias in the industry.

123 F.Supp.2d at 1113-1114.

    In its motion, defendant asserts that the cited passages show factual findings adverse to BAGC regarding discrimination in the construction industry. It is inappropriate for BAGC to collaterally attack defendant's defense of the city ordinance, it argues, since the evidence has

already been found to show discrimination. While Judge Grady did conclude that the evidence "establish[ed] a systemic lack of any effort on the part of non-M/WBE general contractors to solicit bids specifically from M/WBEs for subcontract work," and showed some hiring discrimination on the basis of race and gender, he ultimately found that on its own the testimony did not show a lack of opportunity to bid on contracts. *Id.* It is this conclusion, that the evidence was ultimately insufficient to establish pervasive discrimination, that was essential to the district court's final determination.

But does Judge Grady's finding that the testimony was insufficient to justify the county's ordinance bar us from considering that same evidence as justification for the city's ordinance? To determine if *res judicata* applies, we must look at the facts in order to determine if a cause of action, or in this case a defense, is so closely related to a prior cause of action as to be arising from the same transaction. Anderson v. Chrysler Corp., 99 F.3d 846, 852 (7th Cir. 1996). There is no question that a portion of the factual predicate for the defense overlaps significantly with the facts on which the defense in BAGC v. Cook was based. But the testimony is now being offered alongside the evidence of a different municipality to defend a different ordinance challenged by BAGC. This is enough to take the evidence outside of the realm of *res judicata*.

BAGC also invokes *collateral estoppel*. It attempts to use the doctrine offensively, meaning that it is "seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost." Parklane Hosiery Co., Inc. V. Shore, 439 U.S. 322, 329 (1979). Again, though, the issue decided against the defendant and intervenors in BAGC v. Cook was that their anecdotal evidence alone was not enough to establish a pervasive bias

against M/WBE in the construction industry. Defendant's theory here is that its evidence in the aggregate establishes the discrimination the ordinance seeks to rectify. The issue of whether the disputed anecdotal evidence, combined with defendant's statistical and expert evidence, shows that pervasive discrimination has not yet been "fully and fairly litigated," requiring the application of *collateral estoppel* or *res judicata*. *See generally* Montana v. United States, 440 U.S. 147 (1979).

Plaintiff's motion ultimately rests on the notion that the intervenors were parties in both cases and that they therefore should be precluded from offering testimony here. That, we think, parses things too fine. They were not, in BAGC v. Cook, the main show, and were not even included in the final judgment. They are not the main show here. This is a lawsuit against the City of Chicago concerning a different program. The City was not a party to the prior litigation; it wishes to call those witnesses here. Even apart from the rights and disabilities of the intervenors, the City is entitled to do so. We think defendant and intervenors' motion to preclude the plaintiff from relitigating issues adversely determined against it also parses too fine. They seek to carve out some benefit from Judge Grady's observations and have the court deem those matters as established, even though they ask the court to hear essentially the same testimony from the same witnesses in hopes of persuading the court that Judge Grady's unfavorable observations should not be followed here. That we decline to do. We shall hear the evidence and decide.

Defendant and intervenors' motion to bar relitigation is denied and plaintiff's motion *in limine* number two is denied.

### BAGC's Motion No. 3

BAGC seeks to bar the admission of proposed testimony and expert reports of Dr. Elisabeth Landes of Lexicon. The majority of Landes' testimony concerns alleged revenue differences between minority-owned or women-owned contractors and non-minority or non-women-owned contractors. The City additionally seeks to introduce her testimony about discriminatory practices in unions, programs of other cities and the effectiveness of race-neutral measures. BAGC asks us to preclude this testimony, arguing that it is irrelevant because it does not show affirmative discrimination, it is statistically flawed and therefore unreliable, and that the testimony about unions, other cities and race-neutral measures are irrelevant to this program and unsupported by statistical evidence.

The cases upon which BAGC relies have dealt with the sufficiency of this type of evidence rather than its admissibility. *See* Engineering Contractors Association v. Metropolitan Dade County, 122 F.3d 895, 920-21 (11th Cir. 1997). In Engineering Contractors, the Eleventh Circuit held that the district court was not clearly erroneous in determining that such a revenue analysis was not probative of discrimination. *Id.* at 921. BAGC does not bring any cases to our attention where the court has determined that such evidence is irrelevant or inadmissible.

When an expert's testimony is attacked as unreliable pursuant to the concepts enunciated in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and its progeny, the usual manner of sorting it out is to have a Daubert hearing. If the trier of fact is a jury, there obviously must be a determination about reliability before the evidence is heard. Here, however, the court is the trier of fact. We cannot, with any degree of confidence, decide

reliability on a number of matters solely on the basis of what has been presented in the written arguments of counsel. Reliability must be determined at some point, but that can best be decided after the testimony has been presented and tested by cross examination.

Similarly, relevancy can better be assessed when the testimony is presented. As we have said before, the City's reliance upon a concept of passive participation is predicated upon the notion of pervasive discrimination in the construction industry. It is surely entitled to seek to establish that leg of the stool even though that leg is not alone sufficient to justify its program. We recognize that "passive participation" is by no means self-defining, and the parties have very differing views of what that might mean. Plaintiff suggests that the Seventh Circuit has rejected the concept of passive participation altogether, but that is not the way we read <u>BAGC v. Cook</u>, although, as we have remarked before, there is considerable tension between the views expressed in <u>BAGC v. Cook</u> and those of the Tenth Circuit. There is, of course, a difference between the admissibility of evidence and its sufficiency, but both we leave to another day.

Finally, because defendant keeps bringing it up, the City's Home Rule powers are, we believe, legally irrelevant to this case. There is no question that the City has the authority to fine or deny licenses to contractors who have been adjudged to discriminate, or to refuse to do business with them. But the City, like the states, <u>Schurr v. Resorts International Hotel, Inc.</u>, *supra,* and the federal government, <u>Rothe Development Corp. v. United States Department of Defense</u>, *supra*. is subject to the Fourteenth Amendment, and that includes the limitations on remedies dictated by <u>Croson</u>.

Plaintiff's motion *in limine* number three is denied.

### BAGC's Motion No. 4

BAGC seeks to bar the testimony and expert reports of Dr. David Branchflower. Plaintiff argues that Branchflower's analysis of business loan applications is irrelevant, that his estimate of available minority-owned and women-owned contractors is irrelevant and violates <u>Dura Automotive Systems of Indiana, Inc. v. CTS Corp.</u>, 285 F.3d 609 (7th Cir. 2002), that his testimony about unions is irrelevant, that he is not a proper secondary expert for the anecdotal survey of Metra, that his credit survey was flawed, and that his testimony of race-neutral programs is irrelevant.

Again, while evidence about third party relationships with minority-owned and women-owned contractors does not alone sustain the City's position, it may be circumstantial evidence of industry discrimination and is admissible for that purpose. Likewise, Branchflower's calculations of the availability of minority- and women-owned contractors may provide evidence of historical discrimination or help to establish that the program enacted by the City was narrowly tailored. While many courts have found availability studies to be unpersuasive evidence to support similar programs, they did consider the evidence in reaching their conclusions. *See, e.g.*, <u>Engineering Contractors Association v. Metropolitan Dade County</u>, 122 F.3d 895, 917 (11th Cir. 1997) (holding that simple availability may be refuted by plaintiff showing that discrepancies can be explained by size of the firms).

Plaintiff's challenge under <u>Dura</u> is also misguided. In <u>Dura</u>, the Seventh Circuit determined that an expert witness is allowed to rely on work of his assistants, and usually these assistants need not testify. 285 F.3d at 612. This does not mean, however, that an expert is allowed to be simply a "mouthpiece" for a scientist from another field. *Id.* at 614. BAGC

argues that Branchflower was nothing more than a mouthpiece for John Wainwright because he was not entirely familiar with some aspects of Wainwright's study and the two men reached very different initial conclusions. Branchflower and Wainwright are, however, experts in the same field. Branchflower is free to rely on work by others in his field if he can explain his methodology to the court. Questions about a discrepancy in the calculations of the two men should be raised on cross examination.

Likewise, BAGC's other arguments go to the sufficiency of the evidence rather than its admissibility. Questions concerning Branchflower's methodology or his relationship to the Metra survey should be raised at trial and will not act to bar the evidence at this stage. BAGC's motion *in limine* number four is denied.

<u>BAGC Motion No. 5</u>

Plaintiff moves to bar the introduction of all testimony and expert reports of Timothy Bates. In support of this motion, plaintiff argues that Bates' opinions about societal barriers are irrelevant, that his opinions based on the characteristics of business owners' (CBO) database are irrelevant, that the CBO is outdated and irrelevant, that the City failed to satisfy the conditions of our order of September 10, 2002, that Bates' methodology in reviewing 1992 prime contract payouts was flawed and that his opinions, based on a CTA survey, are irrelevant in that they do not concern Chicago construction contracts.

The evidence that defendant seeks to offer is relevant to show a pattern of discrimination in the Chicago construction business. The evidence may also go to show whether or not the program enacted by the City is narrowly tailored. Most of the other objections offered to the evidence go to the weight of the evidence rather than the admissibility.

The CBO is another matter, however. In our order of September 10, we held that the "plaintiff's expert must have had an opportunity to test Dr. Bates' results derived from the Census Bureau before those results can be admitted." Builders Association of Greater Chicago v. City of Chicago, 2002 WL 31027957, *1 (N.D. Ill. 2002). We went on to state that "[w]e recognize that plaintiff cannot just say it has no access and be done with it; it has some responsibility to pursue reasonable means of acquiring a way to test defendant's results." Id. at *2. In their motion *in limine*, plaintiff fails to offer any steps that it has taken to gain access to the CBO. It also appears that defendant has done nothing to assist defendant in gaining access to the database. As stated in September, the plaintiff must have the chance, after a reasonable effort, to review the results before they will be admitted. If plaintiff can demonstrate, following such efforts, that access was denied, Bates will be precluded from testifying based on material from the database. Plaintiff's motion *in limine* number five to bar the testimony and reports of Bates is denied for now.

BAGC's Motion No. 6

BAGC seeks to bar any evidence offered to show that the city ordinance has a non-remedial justification. Defendant offers the report and testimony of its proposed expert, Gerald Jayne, as well as testimony of individual members of the intervening contract associations, to support its argument that there is an economic benefit which justifies the City's racial and gender preferences. BAGC argues that the cited government benefit, economic growth, is not a compelling interest and any evidence of the alleged benefit is irrelevant.

In response, plaintiff primarily relies on Wittmer v. Peters, 87 F.3d 916, 919 (7th Cir. 1996), for its contention that there are situations where a non-remedial purpose can justify racial discrimination. In Wittmer, a black applicant was selected over white applicants for the

position of lieutenant in a boot camp for young prisoners. The court found that the camp administrators' consideration of race in their hiring decision was justified by the unique mission of reformation in the experimental correctional programs. The court was careful to limit its holding to the situation presented by the boot camps, however, and found only that the racial preference was not unconstitutional in that unique setting.

The Supreme Court has not definitively addressed the issue of whether non-remedial benefits can justify racial and gender classifications. *See* <u>BAGC v. Cook</u>, 356 F.3d at 644. But it is clear that the use of these justifications should be limited, and there are warnings against allowing a public institution to discriminate for any reason other than curing its own past discrimination. <u>Croson</u>, 488 U.S. at 493; <u>Hopwood v. Texas</u>, 78 F.3d 932, 942 (5th Cir. 1996) ("nonremedial state interests will never justify racial classifications"). Defendant seeks to invoke a broad and limitless benefit, economic growth, to justify racial and gender preferences. To test that concept by another scenario, let us suppose a predominantly white municipality established a set-aside program requiring that a substantial proportion of its construction contracts go to whites, or established employment preferences for whites, on the supposition that such programs benefitted the community. We know of nothing indicating that such programs could survive constitutional scrutiny, and economic benefits rationale have been struck down almost without comment. *See* <u>Schurr v. Resorts International Hotel, Inc.</u>, *supra*, at 499. *See also* <u>United States v. City of Warren, Michigan</u>, 138 F.3d 1083 (6th Cir. 1998); <u>United States v. Town of Cicero</u>, 786 F.2d 331 (7th Cir. 1986).

To extend the narrow holding of <u>Wittmer</u> to defendant's theory would be to undermine the integrity of the strict scrutiny standard. Whether the City's M/WBE ordinance resulted in an economic benefit to the City is irrelevant to whether the City was justified in its

discrimination. Any reports or testimony offered to support this line of defense is barred. Plaintiff's motion *in limine* number six is granted.

BAGC's Motion No. 7

Plaintiff seeks to bar all of Dr. Charles Branham's opinions regarding historical, societal discrimination. In support of its motion, BAGC argues that these opinions are irrelevant, that his methodology of using six interviews was flawed, and that he improperly relied on hearsay in forming the opinions.

Fed.R.Evid.703 does not prohibit expert witnesses from forming opinions based on inadmissible evidence. *See* Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1021 (7th Cir. 2000). Branham is free to rely on his interviews in testifying. Criticisms of his methodology or the number and types of interviews that he conducted in preparing his report should be raised during cross examination. Likewise, while his opinions do not present direct evidence of affirmative discrimination by the City, they are relevant for the reasons previously stated. BAGC's motion *in limine* number seven is denied.

BAGC's Motion No. 8

Plaintiff seeks to bar the testimony and expert reports of Michael Dawson as irrelevant and unsupported. Dawson's report opines on racial discrimination affecting African-Americans in lending, employment, housing and consumer markets, as well as the Chicago area contracting industry. In particular, plaintiff challenges Dawson's opinions regarding the Chicago area construction industry since he admits he has had no contact with this industry or researched it specifically.

As discussed above, opinions regarding historic, societal discrimination can be offered as relevant evidence, although it cannot carry the day. And Dawson's lack of expertise on the

Chicago construction industry is not an automatic bar to reaching conclusions about that industry. It means only that he must apply his expert analysis to the research and data of others. Plaintiff is correct that the data relied on by Dawson appears to have a tenuous connection at best to the current Chicago construction industry. Again, though, these criticisms go to the weight of the evidence rather than the admissibility and can be addressed during cross examination. Plaintiff's motion *in limine* number eight is denied.

### BAGC's Motion No. 9

Plaintiff seeks to bar the testimony and expert report of Marta Tienda as irrelevant, and her specific opinions regarding self-employment as improper rebuttal. Plaintiff's relevance arguments are the same objections regarding historic, societal discrimination as voiced in its other motions, and our response is the same. Tienda's original report offers no specific opinions about the construction industry. She created an additional report in response to plaintiff's experts, however, in which she included data related to the Chicago area construction industry. It may be that her inclusion of this data expands the scope of her original report rather than defending the opinions in it, but it is related to her original opinion, is brief in nature, and we will hear it. Plaintiff's motion *in limine* number nine is denied.

### BAGC's Motion No. 10

BAGC seeks to bar any testimony or expert reports of Dr. Yvonne Lau regarding historical, societal discrimination. In support of its motion, BAGC argues that these opinions are irrelevant, that her methodology of using interviews was flawed, that she improperly relied on hearsay in forming the opinions, and that her destruction of the interview notes and tape recordings means she cannot base opinions on those interviews.

As stated above, Fed.R.Evid.703 does not prohibit expert witnesses from forming

opinions based on inadmissible evidence. *See* <u>Cooper v. Carl A. Nelson & Co.</u>, 211 F.3d 1008, 1021 (7th Cir. 2000). While Lau no longer has the recordings or notes of the interviews, the second half of her report summarizes the interview responses and the City has provided the names of the interviewees. She may rely on her interviews in testifying. Criticisms of her methodology or the number and types of interviews that she conducted in preparing her report, as well as potential interviewer and response bias, should be raised during cross examination. As discussed above, while her opinions do not present direct evidence of affirmative discrimination by the City, they are relevant. Plaintiff's motion *in limine* number ten is denied.

## BAGC's Motion No. 11

In its final pretrial motion plaintiff asks us to make adverse inferences about the City's failure to provide transcripts for the Chief Procurement Officers's annual appearances before the Budget Committee other than for 2001, construction contract reports from before 1997, and a witness able to explain the reports from 1997 and later. Since there are no allegations of willful destruction, we will consider the potentially adverse inferences to be drawn from these discovery disputes at trial. *See generally* <u>BASF Corporation v. Old World Trading Co., Inc.</u>, 41 F.3d 1081, 1098 (7th Cir. 1994). For now, plaintiff's motion *in limine* number eleven is denied.

## The City's Motions to Bar LaNoue and Lunn

The City seeks to bar any testimony or expert reports of Dr. George LaNoue or Dr. John Lunn. LaNoue was retained by BAGC to evaluate the legislative history of the M/WBE program in light of <u>Croson</u>. Lunn evaluated the studies of the City's expert witnesses in the light of <u>Croson</u>. The City argues that LaNoue and Lunn's expert opinions are legal conclusions and that, in any case, their reports are not reliable or relevant as required by

Daubert.

Both LaNoue and Lunn's are qualified to testify under the rule of Daubert. Their methods have been well tested and are relevant to the issues in this case. Both have testified in similar cases throughout the country. While certain parts of their testimony have been determined inadmissible by courts, neither has been barred from testifying. In Concrete Works, upon which the City relies heavily, the court found flaws in the opinions of LaNoue and Lunn but never stated that the opinions were inadmissible. To the extent that we disagree with the methodologies and procedures used by LaNoue and Lunn, we will give the evidence less weight. They are, however, qualified to testify.

Fed.R.Evid. 704(a) does not prevent an expert witness from testifying as to the ultimate issue in a case. Miksis v. Howard, 106 F.3d 754, 762 (7th Cir. 1997). In their depositions, both LaNoue and Lunn stop short of opining as to whether the City had a compelling interest in enacting the program and whether the program is narrowly tailored, stating that those are issues for the court to decide. Because neither LaNoue nor Lunn is an attorney, their testimony about Croson is based on a lay understanding of the case and conversations with attorneys. While they cannot serve as mere "mouthpieces" of experts in other fields, *see* Dura Automotive Systems of Indiana v. CTS Corp., 285 F.3d 609, 614 (7th Cir. 2002), nothing prevents them from relying on outside information as support for their opinions. We will, of course, not admit any testimony that lacks sufficient foundation. Again, we repeat, this is a bench trial. If experts wander beyond their fields of expertise or intrude into areas reserved for the court, we can steer them back or ignore what they have to say.

Defendant's motions *in limine* to bar Dr. LaNoue and Dr. Lunn are denied.

### The City's Motion Regarding "Racial Animus"

Here, the city asks that plaintiff be barred from equating racial animosity or hostility with intentional discrimination at trial. The City argues that there is potential prejudice to witnesses on the stand – that they could be led into making a legal conclusion they do not understand. As discussed above, the evidence that can be presented to show intentional discrimination is varied. Evidence regarding the presence or absence of racial animus, an ill-will or hostility based on race, is clearly relevant. But so also is any race-based exclusion grounded in stereotypes, such as a belief that black-owned business enterprises are invariably new, inexperienced and undercapitalized and therefore should not be considered. Any potential witness confusion is best dealt with in the context of trial and we defer intervention on this matter until that point. For now, then, the City's motion regarding racial animus is denied.

### CONCLUSION

Plaintiff's motion *in limine* number six is granted, and its remaining motions *in limine* are denied. Defendant's four motions are denied.

*[signature]*
JAMES B. MORAN
Senior Judge, U. S. District Court

April 1, 2003.