# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1122 | **DATE** | 3/8/2004 |
| **CASE TITLE** | BUILDERS ASSOCIATION OF GREATER vs. CITY OF CHICAGO | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due_____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Fees and costs are awarded to Electrical Contractors Association (ECA) in the amount of $52,426, to Underground Contractors Association (UCA) in the amount of $15,942, and to Kiferbaum in the amount of $2,248, payable by the City.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

LG

courtroom deputy's initials

number of notices

MAR 0 9 2004
date docketed

GMA
docketing deputy initials

date mailed notice

CLERK, U.S. DISTRICT COURT

2004 MAR -9 PM 6:15

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

609

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BUILDERS ASSOCIATION OF GREATER CHICAGO, )
)
)
Plaintiff, )
)
vs. )          No. 96 C 1122
)
CITY OF CHICAGO, )
)
Defendant. )

**DOCKETED**

**MAR 0 9 2004**

## MEMORANDUM OPINION AND ORDER

In late October and early November, 2000, the defendant served more than 500 subpoenas on various contractors and subcontractors. This was about the time Judge Grady ruled, and, as previously noted, this case began to heat up. Magistrate Judge Brown delayed ruling on the various motions to quash until after the conclusion of the appeal, and she then quashed the subpoenas. I overruled the subsequent objections and referred the issue of fees and costs back to Judge Brown. On May 13, 2002, she awarded fees and costs of $157,277.75 to the Electrical Contractors Association (ECA), $47,826.48 to the Underground Contractors Association (UCA), and $6,745 to Kiferbaum Construction Corp. (Kiferbaum). On March 20, 2003, I sustained objections to the awards because I concluded that the standard used was erroneous, particularly in light of the alternative availability of remuneration, but I left open revisiting the issue if the movants believed they could establish that the City did not act in good faith. The movants renewed their motions prior to the trial of this matter. The City responded, and the movants (and plaintiff) replied after the trial had ended but before I ruled on the substantive trial issues.

It is helpful to review the dynamics of this discovery dispute in the run-up to trial and

609

its conclusions. The City, in preparing its defense, faced wide gaps in its knowledge about the local construction industry. For example, it could not determine how many M/WBEs were, in 1990 or later, available, willing and able to bid on City construction contracts, and it knew very little about M/WBE subcontractor bidding in the private sector or unsuccessful M/WBE subcontractor bidding on City projects. It apparently first sought to supplement its knowledge by interrogatory and document requests, and then through a suggested survey. Voluntary response to a survey in the County case had, however, come under attack by one of defendant's experts as being so inadequate as to not provide meaningful data.

The City then turned to subpoenas addressed to Chicago area construction firms, and the subpoenas, as Judge Brown noted, were "extremely broad." She went on to describe in some detail their breadth. After the subpoenas issued, the defendant sought to negotiate a more modest compliance but those negotiations ultimately failed. Judge Brown noted that a "subpoena is not a polite suggestion or an invitation to negotiate. It is a command ...." Further, she concluded that the modified demand still was considerably broader than it ought to have been, in part because she doubted that the information sought could "be distilled into a statistically valid model that would address a relevant issue in the case." So far as I can determine, the City did not detail the statistical model it hoped to use. That was, apparently, for later development by the economists.

Was there information sought that would have been helpful in developing a statistical model? By hindsight, I think the answer is yes, although the absence of the information was, ultimately, of little significance. For example, defendant was successful in persuading me that the local construction market is flawed by past discrimination, leading to barriers to the use of M/WBE subcontractors. Resolution of the discovery disputes was also hampered by plaintiff's refusal to concede that there has been past discrimination in the local construction

industry and its insistence that any post-enactment evidence was irrelevant.

Further, so far as I know, the City never expressed any willingness to reimburse the subpoena recipients for the costs of their doing the research for a City statistical model – but the recipients likewise never expressed any willingness to provide at least some of the information if the City agreed to pay for it. Also, although Judge Brown credited the affidavits of the recipients respecting undue burden, the extent of that burden remains somewhat unclear. For instance, the ECA recipients were electrical contractors. It is reasonable to assume that electrical contracts are generally subcontracts self-performed by the electrical contractor and that, consequently, there were few records to review with respect to subcontracting – but, as a result, there was little useful information obtainable by the discovery exercise. That assumes, of course, that small contractors have files sufficiently organized to permit them to access a few records and ignore the rest, a questionable assumption. Another matter: the recipients question the good faith of the City in seeking information from contractors after serving identical subpoenas on trade associations. Clearly, however, most of the information was unavailable and unknown to the trade associations.

Finally, we note that the subpoenas issued prior to BAGC v. County of Cook, 256 F.3d 642 (7th Cir. 2001). The defendant then could reasonably hope that the court would be as sympathetic to much of the information sought as was the Tenth Circuit later in Concrete Works of Colorado, Inc. v. City and County of Denver, 321 F.3d 950 (10th Cir. 2003). Indeed, I admitted much comparable evidence.

So what do I make of all this? The subpoenas as originally issued were blatantly overbroad. They were, apparently, a hard line first step looking toward a negotiated agreement on what would be produced. I cannot conclude that the City had a good faith belief that they were not unreasonable or unduly burdensome as issued, and, indeed, defendant

thereafter pulled back from its initial demands. The broad subpoenas were bad strategy and resulted, ultimately, in the City probably obtaining less than it would have by a reasonable initial approach. The fees and costs, however, resulted not at all from any attempt to comply with those subpoenas. Rather, they resulted from a lengthy battle over what, if anything, the City was going to get. Each side had its own perceptions of what could conceivably be relevant,[1] and that gap was never bridged. The petitioners are entitled to some fees and costs; they should not have had to respond to the original subpoenas. But at some point the argument became a good faith disagreement about the scope of permissible evidence, as well as not so much a disagreement as a failure by both sides to explore less onerous ways of obtaining at least some of the information. And then the City no longer had an obligation to subsidize the movants' defense of their position.

Where that point was is incapable of precise demarcation. To bring this matter to an end we conjecture, and admittedly it is a conjecture, that it was at the one-third mark. Accordingly, I award fees and costs to ECA in the amount of $52,426, to UCA in the amount of $15,942, and to Kiferbaum in the amount of $2,248, payable by the City.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 8 , 2004.

---

[1] The movants for fees and costs and the recipients, were not parties to the lawsuit, but many of them were not wholly bystanders either, for they stood to benefit from BAGC's success in the litigation, and BAGC provided much of the argument before Judge Brown